MARY ELLEN COOKSON *v.* EDWIN COOKSON
(12761)

PETERS, C. J., SHEA, DANNEHY, CALLAHAN and STOUGHTON, Js.

Argued June 11—decision released August 26, 1986

*Penn Rhodeen,* with whom, on the brief, were *William F. Gallagher* and *Eileen M. Quinn,* law student intern, for the appellant (plaintiff).

*Donna Decker Morris,* for the appellee (defendant).

*Patty Jenkins Pittman,* for the minor children.

CALLAHAN, J. This is an appeal by the plaintiff mother, Mary Ellen Cookson, from the modification of a dissolution of marriage judgment which modification transferred custody of three minor children from the plaintiff to the defendant father, Edwin Cookson. The plaintiff claims that the trial court erred in granting the motion for modification by: (1) applying a preponderance of the evidence rather than a clear and convincing evidence standard of proof; (2) substituting a "least detrimental alternative" standard for the statutory standard of the best interests of the children when determining custody; and (3) finding sufficient evidence to support a modification of custody. We find no error.

A brief recitation of the history of the case is necessary to place the plaintiff's claims in proper perspective. The plaintiff was married to the defendant on October 7, 1972. There were three sons issue of the marriage born in 1975, 1977 and 1980. The marriage

was dissolved on January 30, 1981. Judgment in the dissolution action was entered pursuant to an oral stipulation and agreement which awarded custody of the three minor children to the plaintiff subject to unspecified reasonable rights of visitation in the defendant.[1]

In May, 1982, the defendant, having been informed by the plaintiff that she planned to move out of the state, filed a motion for specific periods of visitation. A hearing was held on the defendant's motion on June 22, 1982. Because of a misunderstanding, however, the plaintiff did not arrive at the courthouse in time to be present. She was offered an opportunity to be heard the following day but, apparently to avoid further confrontation with the defendant, who had a psychiatric history of violent outbursts, she took the three children and left for Florida. There she joined Thomas Leahy whom she had been seeing in Connecticut after she and the defendant had separated. The plaintiff and Leahy were married in November, 1982, and thereafter resided in Florida with the children.

On August 27, 1982, as a result of the earlier hearing on June 22, the provisions of the dissolution judgment concerning child support and visitation were modified. The defendant was granted specific rights of visitation for three weeks during each summer and for a week during the Christmas holidays. The modification also lowered the defendant's child support obligation. Compliance with the terms of the modified judgment by both parties was less than perfect.

During a visit by the children to the defendant in Connecticut in June, 1984, the defendant learned of some rather unusual disciplinary measures that had

[1] The parties stipulated that the defendant had no burden to prove a substantial change in circumstances because, at the time of the dissolution of the marriage, no evidence was taken concerning the best interests of the children. See *Stewart* v. *Stewart,* 177 Conn. 401, 407, 418 A.2d 62 (1979); *Simons* v. *Simons,* 172 Conn. 341, 348, 374 A.2d 1040 (1977).

been imposed on them by their stepfather, Thomas Leahy, apparently with the knowledge and acquiescence of the plaintiff. As a result, the defendant refused to return the children to their mother in Florida and, on July 27, 1984, he filed a motion seeking to gain their custody. On August 15, 1984, the trial court, *DeMayo, J.,* awarded temporary custody of the three children to the defendant.

On September 18, 1984, after the completion of a court ordered investigation, family relations officer Katherine Cerruti filed a report in which she indicated that the plaintiff's acquiescence in Leahy's "unconventional and somewhat bizarre discipline techniques raises concerns as to her overall parenting." Cerruti recommended that the custody of the three children be transferred to the defendant under certain conditions, with limited rights of visitation in the plaintiff. Nine days later, the plaintiff initiated a divorce action in Florida against Leahy on the grounds that the marriage was "irretrievably broken." She then filed a motion in the present action to refer the question of custody back to family relations on the ground of a "substantial change in circumstances." Subsequently, she also filed a motion to modify the temporary custody order on the same ground. A second family relations study was ordered as a result. In that study, family relations officer Helen Murphy also recommended that custody of the children be awarded to the defendant with specific rights of visitation in the plaintiff and further recommended that the plaintiff be prohibited from removing the children from Connecticut or exposing them to Leahy.

Upon learning of Murphy's recommendation, the plaintiff, on Friday, December 14, 1984, during a visit with the children, abducted them from the defendant's temporary custody, and returned with them to Florida and rejoined Leahy. She then told the children that the divorce action had been a sham and that she intended

to remain married to Leahy. The following week the plaintiff was held in contempt of court and a warrant was issued for her arrest. Upon learning of these events and acting on the advice of her attorney, the plaintiff returned to Connecticut with the children.

Subsequent to the plaintiff's return, a hearing was held on the defendant's motion of July 27, 1984, to modify the dissolution judgment which granted custody of the three children to the plaintiff. The hearing, at which the court heard testimony from both lay persons and professionals, consumed eight days and covered over 1500 pages of trial transcript. A thorough exploration was undertaken of the various factors that related to a determination of the best interests of the children, including the defendant's psychiatric history and the interaction of Leahy, the children and their mother. Those factors and the plaintiff's seemingly irresponsible attitude toward the court were major points on which the trial court focused. At the conclusion of the hearing, the trial court, on May 10, 1985, issued a detailed memorandum of decision in which it concluded that the three children should be placed in the custody of the defendant with certain conditions imposed and that the plaintiff should have specific visitation rights with certain conditions imposed. The plaintiff has appealed from the judgment rendered on that decision.

I

The plaintiff first claims that the trial court erred in applying a "preponderance of the evidence" rather than a "clear and convincing" standard of proof to the modification proceeding. The plaintiff argues that the standard applied violated the due process clauses of both the state and federal constitutions, common law principles and sound policy.

"A standard of proof allocates the risk of error between the litigants and indicates the relative importance of the ultimate decision. *Addington* v. *Texas,* 441 U.S. 418, 423, 99 S. Ct. 1804, 1808, 60 L. Ed. 2d 323 (1979). For example, the 'proof beyond a reasonable doubt' standard implies that the party on whom that burden is imposed should bear almost the entire risk of error. Id. at 423–24, 99 S. Ct. at 1808. In contrast, the 'preponderance of the evidence' standard indicates that the litigants should share equally the risk of error, id. at 423, 99 S. Ct. at 1808, because the interests at stake have roughly equal societal importance. *Santosky* v. *Kramer,* 455 U.S. 745, 787, 102 S. Ct. 1388, 1411–12, 71 L. Ed. 2d 599 (1982) (Rehnquist, J., dissenting). Proof by 'clear and convincing' evidence is an intermediate standard generally used in civil cases involving allegations of fraud or some other quasi-criminal wrongdoing, or when particularly important individual rights are involved. *Addington,* 441 U.S. at 424, 99 S. Ct. at 1808." *United States* v. *Schell,* 692 F.2d 672, 676 (10th Cir. 1982) (preponderance of the evidence standard, constitutional in "dangerous special offender" proceeding to enhance defendant's criminal sentence).

In *Santosky* v. *Kramer,* supra, 769–70, the United States Supreme Court held that in a hearing on a petition to terminate parental rights, due process required that the state prove statutory termination criteria by a "clear and convincing evidence" standard rather than by a "fair preponderance of the evidence" standard. The plaintiff argues that the same higher standard of proof is required to comport with due process in a postjudgment modification of custody proceeding. We disagree.

The three factors considered in *Santosky* to determine whether a particular standard of proof in a particular proceeding satisfies due process are: (1) the

private interests affected by the proceeding; (2) the risk of error created by the chosen procedure; and (3) the countervailing governmental interest supporting use of the challenged procedure. Id., 754. When those factors are applied to the present case, we conclude that a "fair preponderance of the evidence" standard was the proper standard of proof and that that standard satisfies due process under both the state and federal constitutions.

This court in *In re Juvenile Appeal (83–CD),* 189 Conn. 276, 455 A.2d 1313 (1983), dealt with the issue of the proper standard of proof to be applied in a temporary custody hearing. There we examined the reasoning in *Santosky* and concluded that the higher standard of "clear and convincing evidence," required by *Santosky,* was not required in a temporary custody hearing because "(1) the nature of the private interests concerned in the two kinds of hearings differs, and (2) the deprivation of rights in a temporary custody adjudication is neither final nor irrevocable." *In re Juvenile Appeal (83–CD),* supra, 297.

In the present case the nature of the private interests involved likewise differs substantially from those in *Santosky.* In this instance, prior to judicial intervention, neither parent had an exclusive right to the custody of the children; their rights were joint and equal. General Statutes § 45-43;[2] *Yontef* v. *Yontef,* 185 Conn. 275, 291, 440 A.2d 899 (1981); *Antedomenico* v. *Antedomenico,* 142 Conn. 558, 562, 115 A.2d 659 (1955). This contrasts sharply with the situation in *Santosky* where the parents were pitted against the state and

---

[2] "[General Statutes] Sec. 45-43. FATHER AND MOTHER JOINT GUARDIANS. The father and mother of every minor child are joint guardians of the person of the minor, and the powers, rights and duties of the father and the mother in regard to the minor shall be equal. If either father or mother dies or is removed as guardian, the other parent of the minor child shall become the sole guardian of the person of the minor."

faced the prospect of losing the children permanently to a complete outsider to the family unit. Further, the modification of a custody decree does not involve the same complete severance of the parent-child relationship that results from the termination of parental rights. *Santosky* v. *Kramer,* supra, 747. After the modification of a custody order the noncustodial parent, generally speaking, retains the right to maintain a relationship with the children and to participate, albeit to a more limited extent in their upbringing. See General Statutes § 46b-56 (e);[3] *Raymond* v. *Raymond,* 165 Conn. 735, 741, 345 A.2d 48 (1974). Also a custodial determination is not a "final and irrevocable" and immutably permanent decision as is that effected by a termination proceeding. *Santosky* v. *Kramer,* supra, 759; see *McGaffin* v. *Roberts,* 193 Conn. 393, 405, 479 A.2d 176 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1747, 84 L. Ed. 2d 813 (1985). The court has continuing jurisdiction over a custody decree; see § 46b-56 (a) and (b);[4] and the noncustodial parent retains the option to move to modify custody based on a substantial change in circumstances affecting the welfare of the children. *Hall* v. *Hall,* 186 Conn. 118, 122, 439 A.2d 447 (1982); 24 Am. Jur. 2d 1003.

---

[3] General Statutes § 46b-56 (e) provides: "A parent not granted custody of a minor child shall not be denied the right of access to the academic, medical, hospital or other health records of such minor child unless otherwise ordered by the court for good cause shown."

[4] General Statutes § 46b-56 (a) and (b) provide: "Sec. 46b-56. (Formerly Sec. 46-42). SUPERIOR COURT ORDERS RE CUSTODY AND CARE OF MINOR CHILDREN IN ACTIONS FOR DISSOLUTION OF MARRIAGE, LEGAL SEPARATION AND ANNULMENT. ACCESS TO RECORDS OF MINOR CHILDREN BY NON-CUSTODIAL PARENT. (a) In any controversy before the superior court as to the custody or care of minor children, and at any time after the return day of any complaint under section 46b-45, the court may at any time make or modify any proper order regarding the education and support of the children and of care, custody and visitation if it has jurisdiction under the provisions of chapter 815o. Subject to the provisions of section 46b-56a, the court may assign the custody of any child to the parents jointly, to either parent or to a third party, according to its best judgment upon the facts

In sum, while substantial, the private interests involved in a custody dispute between parents and the effect on those interests wrought by a judicial transfer of custody are not such that the constitution requires the use of a "clear and convincing" standard of proof by the tribunal making the decision.

We must also consider whether the possibility of an erroneous deprivation of custody by the use of a "preponderance of the evidence" standard deprived the plaintiff of due process of law. The United States Supreme Court in *Santosky* stated that "the relevant question is whether a preponderance of the evidence standard fairly allocates the risk of an erroneous fact-finding between these two parties." *Santosky* v. *Kramer*, supra, 761. The court answered that question by determining that due process required a "clear and convincing" standard in termination proceedings, based largely on what it perceived to be the unequal contest between the state and the parents from whom the state sought custody. It was the court's view that in a proceeding to terminate parental rights the ability of the state to assemble its case almost "inevitably dwarfs the parents' ability to mount a defense." Id., 763. Additionally, the court pointed out that in a termination proceeding there is a striking disproportion in the litigation options of the adversaries because the parents do not have a "double jeopardy" defense against repeated state termination efforts. "If the State initially fails

of the case and subject to such conditions and limitations as it deems equitable. The court may also make any order granting the right of visitation of any child to a third party including but not limited to grandparents.

"(b) In making or modifying any order with respect to custody or visitation, the court shall be guided by the best interests of the child, giving consideration to the wishes of the child if he is of sufficient age and capable of forming an intelligent preference, provided in making the initial order the court may take into consideration the causes for dissolution of the marriage or legal separation if such causes are relevant in a determination of the best interests of the child."

to win termination, as New York did here . . . it can always try once again to cut off the parents' rights after gathering more or better evidence. Yet, even when the parents have attained the level of fitness required by the State, they have no similar means by which they can forestall future termination efforts." Id., 764.

The United States Supreme Court found that those factors coupled with the use of a "fair preponderance of the evidence" standard created a "significant prospect of erroneous termination"; id.; and that the consequent social cost of the complete destruction of the natural family by an erroneous termination of parental rights was too great a risk to assign to a "preponderance of the evidence" standard, which allocates the risk of error nearly equally between destruction of the family unit and mere maintenance of the status quo of the children in a foster home.

A custody dispute between parents does not present the same inherent disparity in resources, disproportionate litigation options or the risk of total destruction of the family unit which would constitutionally require the use of the higher standard of proof by "clear and convincing" evidence.

In *Santosky,* the final factor that the court addressed was the "countervailing governmental interest supporting use of the challenged procedure." Id., 755. In a proceeding to determine custody between parents, since the government is not a party, this factor would translate to whether the competing interests of those affected by the litigation support the use of a "preponderance of the evidence" standard or require the use of a "clear and convincing" standard.

In a custody dispute between parents, unlike the termination proceeding in *Santosky* where the court found the parents and the children had a common interest in preventing destruction of the family unit by the state,

each parent and the children have interests which conflict in varying degrees but have relatively equal weight on the societal scale. The custodial parent has an interest in retaining custody, the noncustodial parent has an interest in the well-being of the children, and the children have an interest in continuity of care. The overriding concern, however, is that the children be placed in an environment that secures their best interests.

When the interests of the parents vis-a-vis each other and the children allegedly conflict, that conflict is best resolved by placing the burden on the noncustodial parent to prove by a fair preponderance of the evidence that a transfer of custody is in the best interests of the children. Where "important interests affected by a proceeding are in relative equipoise, as they are in this situation, a higher standard of proof would necessarily indicate a preference for protection of one interest over the other." *In re Juvenile Appeal (83–CD)*, supra, 298.

Although we recognize the importance of continuity of care as a significant factor in the statutory mandate that custody disputes be resolved in accord with the "best interests of the child," we do not believe that this consideration requires implementation through departure from the normal standard of proof. As in *In re Juvenile Appeal (83–CD)*, supra, 298–99, "the various interests [in a temporary custody hearing] are best served by applying the normal civil standard of proof which is a fair preponderance of the evidence."

We conclude therefore that, although a "clear and convincing" standard of proof is constitutionally required for the termination of parental rights under *Santosky* and is mandated by statute,[5] the burden of

---

[5] General Statutes § 17-43a (b) provides: "Sec. 17-43a. TERMINATION OF PARENTAL RIGHTS OF CHILD COMMITTED TO COMMISSIONER. . . . (b) The superior court upon hearing and notice, as provided in sections 45-61d and 45-61f, may grant such petition if it finds, upon clear and convincing evi-

proof by a "preponderance of the evidence" placed on the moving parent in a proceeding to determine custody comports with due process and serves adequately to protect the various interests involved. The trial court did not err in using that standard. See *Leo* v. *Leo,* 213 N.W.2d 495, 496 (Iowa 1973); *Watters* v. *Watters,* 112 Mich. App. 1, 13, 314 N.W.2d 778 (1981); *Vieira* v. *Vieira,* 98 R.I. 454, 457, 204 A.2d 431 (1964); *Masek* v. *Masek,* 90 S.D. 1, 6–7, 237 N.W.2d 432 (1976); *Oglesby* v. *Silcott,* 620 S.W.2d 820, 823 (Tex. Civ. App. 1981).

This conclusion should not be deemed to sanction the modification of custody for less than compelling reasons. We hold only that a modification of custody hearing is not a proceeding that requires, constitutionally

---

dence, that the termination is in the best interest of the child and that, with respect to any consenting parent, such parent has voluntarily and knowingly consented to termination of his parental rights with respect to such child or that, with respect to any nonconsenting parent, over an extended period of time, which, except as provided in subsection (c) of this section, shall not be less than one year: (1) The child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child; or (2) the parents of a child who has been found by the superior court to have been neglected or uncared for in a prior proceeding have failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, they could assume a responsible position in the life of the child; or (3) the child has been denied, by reason of an act or acts of parental commission or omission, the care, guidance or control necessary for his physical, educational, moral or emotional well-being. Nonaccidental or inadequately explained serious physical injury to a child shall constitute prima facie evidence of acts of parental commission or omission sufficient for the termination of parental rights; or (4) there is no ongoing parent-child relationship, which means the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child. If the court denies a petition for consent termination of parental rights, it may refer the matter to an agency to assess the needs of the child, the care the child is receiving, and the plan of the parent for the child."

or otherwise, the judicial implementation of a burden of proof other than the familiar civil standard.

## II

The plaintiff next claims that the trial court did not apply the statutorily required "best interests of the child" standard in making its custody determination. That standard is mandated by General Statutes § 46b-56 (b) which provides in pertinent part, "[i]n making or modifying any order with respect to custody or visitation, the court shall be guided by the best interests of the child. . . ." Accordingly, our case law makes it clear that when determining the custody of minor children the ultimate test the court must apply is the "best interests of the child." *Stewart* v. *Stewart,* 177 Conn. 401, 408, 418 A.2d 62 (1979). The plaintiff asserts that the trial court applied a "least detrimental alternative" standard rather than the "best interests of the child" standard in its determination of the custody of the children. We find no merit in the plaintiff's claim.

The trial court in its memorandum of decision did indicate that it sought the "least detrimental alternative" and in the prologue to its memorandum of decision appeared to equate the "least detrimental alternative" with the best interests of the children. The trial court was, however, obviously searching to accommodate the best interests of the children, and on the record before us we have no reason to believe that it did not ultimately apply the "best interests of the child" standard to its decision. "Least detrimental alternative" was manifestly alternate phraseology utilized by the trial court to describe the compelling concerns involved in the difficult custody decision it faced. Significantly, later in its memorandum of decision, the trial court recognized that the defendant was asking the court to consider the present best interests of the children and, in promul-

gating its orders, the trial court summarized its conclusions in the following manner. "Return to the home of the parent who obstructed the children's relationship with their father, who permitted someone other than herself to impose humiliating and frightening punishments for relatively minor misbehaviors, and who lied and defied court orders, is inconsistent with the best interests of these children."

The fact that the "least detrimental alternative" was mentioned in the trial court's decision as a desirable goal and may have culminated in the same result as the statutory criteria does not require a conclusion that the court based its decision on that standard. Any ambiguity notwithstanding, and no clear evidence to the contrary having been introduced, it was implicit in the trial court's award that it was based on the statutory standard of "the best interests of the child." *Dubicki* v. *Dubicki,* 186 Conn. 709, 718, 443 A.2d 1268 (1982).

### III

The plaintiff's final claim is that the evidence in the whole record is insufficient to support a change in custody. She argues that the trial court's finding of facts was clearly erroneous, that the trial court failed to find and include in its memorandum of decision facts which were admitted or undisputed, that the conclusions of the trial court are not logically or legally correct or supported by the facts set out in the memorandum of decision and that the trial court abused its discretion in ruling as it did because the evidence was insufficient to support its judgment.

We cannot retry the case. *State* v. *Rodriquez,* 200 Conn. 685, 693, 513 A.2d 71 (1986); *Kaplan* v. *Kaplan,* 186 Conn. 387, 391, 441 A.2d 629 (1982); *Yontef* v. *Yontef,* supra, 278–79; *Johnson* v. *Flammia,* 169 Conn. 491, 497, 363 A.2d 1048 (1975). "On appeal, it is the function of this court to determine whether the deci-

sion of the trial court is clearly erroneous. See Practice Book, 1978, § 3060D. This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, these facts are *clearly erroneous.*" (Emphasis added.) *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980).

We have reviewed the record and, while there are areas where reasonable persons could differ in their interpretation of the evidence, we cannot say that, as a matter of law, the trial court's factual findings are unsupported or mistaken. See *Koizim* v. *Koizim,* 181 Conn. 492, 498, 435 A.2d 1030 (1980); *deCossy* v. *deCossy,* 172 Conn. 202, 204, 374 A.2d 182 (1977). They were therefore not clearly erroneous. *Sportsmen's Boating Corporation* v. *Hensley,* 192 Conn. 747, 751, 474 A.2d 780 (1984); *Garrison* v. *Garrison,* 190 Conn. 173, 176, 460 A.2d 945 (1983). "A factual finding may be rejected by this court only if it is 'clearly erroneous.'" *Kaplan* v. *Kaplan,* supra, 392.

Further, the trial court was not required to recite all the facts on which it relied. It did file a lengthy memorandum of decision and included a discussion of the factual findings which adequately supported its conclusions. "The trial court's failure to include certain findings does not constitute error when the only effect of such inclusion would be to present a more detailed recital of surrounding events which do not undermine the basis for the trial court's decision." *Trunik* v. *Trunik,* 179 Conn. 287, 288–89, 426 A.2d 274 (1979). Finally, we cannot say, from our review of the record,

that the conclusions of the trial court were legally or logically incorrect or unsupported by the facts or that the evidence was insufficient for the trial court to rule as it did. "The weight given the evidence before it is within the sole province of the trial court." *Timm* v. *Timm,* 195 Conn. 202, 210, 487 A.2d 191 (1985). The action of the trial court is entitled to great weight and is due every reasonable presumption that it is correct. Id., 206. " 'Nothing short of a conviction that the action of the trial court is one which discloses a clear abuse of discretion can warrant our interference.' *Morrill* v. *Morrill,* 83 Conn. 479, 491, 77 A. 1 [1910]." *Simons* v. *Simons,* 172 Conn. 341, 348, 374 A.2d 1040 (1977); *Hall* v. *Hall,* 186 Conn. 118, 124, 439 A.2d 447 (1982).

There is no error.

In this opinion the other justices concurred.