JEROME H. GROSS *v.* 1776 ASSOCIATES ET AL.
(4159)

BORDEN, DALY and BIELUCH, Js.

Argued January 5—decision released June 30, 1987

*James J. Tancredi,* with whom, on the brief, were *John B. Nolan* and *Kirk D. Tavtigian, Jr.,* for the appellant (plaintiff).

*David P. Ball,* with whom, on the brief, was *Thomas A. Frizzell,* for the appellees (defendants).

BIELUCH, J. This action was brought by a limited partner against 1776 Associates (1776), a limited partnership, and Lake Avenue Associates, Inc. (Lake Avenue), a general and limited partner, seeking a dissolution of the limited partnership, a determination of its assets, an accounting to establish the amount due the plaintiff and damages. The defendants set forth special defenses in their answer and, by way of counter-

claim, sought a mandatory injunction requiring the plaintiff to close on the sale of his interest to Lake Avenue, and a declaratory judgment that the plaintiff's limited partnership interest had terminated.

After a trial, the court found the issues for the defendants and concluded that the plaintiff's interest in the limited partnership had terminated on November 30, 1979. As part of its judgment, the court ordered the plaintiff to execute the necessary documents to close the sale of his interest to the defendant general partner, Lake Avenue, upon Lake Avenue's tender to him of the sum of $78,500. From that judgment, the plaintiff has appealed.

The plaintiff claims on appeal that the trial court erred in finding (1) that the proper purchase price for the plaintiff's interest in the limited partnership was $78,500, (2) that the defendants' failure to distribute the total annual positive cash flow from 1976 to 1979 was not a breach of the partnership agreement, and (3) that the failure to distribute the total annual cash flow did not constitute a breach of the general partner's fiduciary duty. We find no error.

The facts admitted by the parties and found by the court are as follows: The plaintiff was a limited partner of 1776. The defendant Lake Avenue was a general, and later also a limited, partner of 1776. On May 10, 1974, Lake Avenue, David T. Chase and the plaintiff formed a limited partnership by written agreement under the firm name of "1776 Associates." Initially, Lake Avenue was the sole general partner, while Chase and the plaintiff were limited partners. The purpose of the limited partnership was to construct, own, and operate or lease a motor hotel in Danbury. Under the provisions of § 4.04 of the partnership agreement, Nathan S. Ancell, president of Lake Avenue, was designated to act on behalf of the general partner on all matters relating to the partnership.

The respective interests of the partners in the partnership and in its profits, losses, distributions and assets were as follows: Lake Avenue – 50 percent; Chase – 25 percent; Gross – 25 percent. The following cash contributions were initially made by the partners: Lake Avenue – $550,000; Chase – $275,000; Gross – $275,000. Pursuant to § 7.01 of the partnership agreement, in 1975 the partners made the following additional capital contributions in cash: Lake Avenue – $200,000; Chase – $100,000; Gross – $100,000.

Under § 14.02 of the partnership agreement, a limited partner had the right to sell his entire interest in the partnership to the general partner, who was obligated to purchase such interest at a price determined as follows: "The purchase price for the interest of the Limited Partner shall be an amount equal to the higher of (1) the credit balance, if any, of the capital account of the Limited Partner as of the end of the calendar month next preceding the date on which notice of the Offer is given by the Limited Partner, or (2) the sum of One Dollar ($1.00)."

Pursuant to § 14.02, on February 11, 1976, the plaintiff gave Lake Avenue written notice of his election to sell his interest in the partnership and requested that it "advise the Independent Accountant, as provided in § 14.03 (e) to prepare and deliver to us a certificate setting forth the amounts required to fix the purchase price." In a follow-up letter to Nathan S. Ancell one week later, the election was modified as follows: "[I]t is as I indicated to you my minimum requirement to obtain a return of capital of $200,000. Once you or the independent accountant determines the purchase price as provided in the agreement, I will leave the excess above $200,000 in the deal. I am hopeful that this would give me something close to a five percent interest. I

am taking the liberty of sending my check in the amount of $3500 which would equal five percent of the amount of the $70,000 call."

Section 13.01 of the limited partnership agreement provided that "[t]he interest of a Limited Partner shall not be assignable in part." On behalf of Lake Avenue, Ancell agreed to waive this limitation. The plaintiff's capital account for the determination of the purchase price under § 14.02 was determined by the independent accountant under § 14.03 (e) to be $232,030. By his letter to Ancell on March 9, 1976, the plaintiff acknowledged: "[I]f the provisions of [§§ 1402 and 1403 (e)] were applied in their strictest terms, for me to retain a 5% investment as of January 31, 1976, I would receive a return of capital of $185,624 (80 percent of $232,030). . . . I am hopeful that you [would allow] me to realize the additional $14,376 necessary to give me a return of capital of $200,000 and retain a 5% investment." In response to this request, on behalf of Lake Avenue, Ancell on March 15, 1976, waived the price formula and agreed that Lake Avenue would pay $192,500 for 80 percent of the plaintiff's interest in the partnership.

After the plaintiff and defendant completed their negotiations, on March 22, 1976, the named parties and Chase executed an "Assignment of Limited Partnership Interest and Amendment to Limited Partnership Agreement." The plaintiff thereby assigned to Lake Avenue 80 percent of his 25 percent interest in the limited partnership, including "the profits, losses, distributions and assets of 1776 Associates" for the consideration of $192,500. The transfer of this interest was made effective as of January 31, 1976, by agreement of the general and limited partners. By virtue of this sale of 80 percent of the plaintiff's 25 percent share in the partnership, his interest was reduced to 5 percent. Lake Avenue became a substituted limited part-

ner with 20 percent interest upon amendment and recordation of the certificate of limited partnership, in addition to continuing as a general partner. During the negotiations for this sale, the plaintiff made a further contribution to capital of $3500 on February 18, 1976, thereby increasing his total investment in the limited partnership to $378,500. This contribution of $3500 was made in anticipation of the plaintiff's retention of 5 percent interest in the limited partnership. Lake Avenue then contributed $14,000 in expectation of acquiring 20 percent interest as a substituted limited partner. The remaining general and limited partnership contributions were proportionately made for a total added investment of $70,000.

Section 14.03 (e) of the limited partnership agreement provided that an independent accountant would determine the amounts required under § 14.02 for determination of the sale price for the plaintiff's interest. It provided further that "[s]uch certificate shall be binding and conclusive on the General Partner and Limited Partner except that if either or both dispute any item or items included in or excluded from the determination of the purchase price, the item or items in dispute shall be referred by them jointly and promptly to a third person or firm for the final and conclusive determination of the item or items in dispute." As there was no dispute between the parties at the time of the assignment, this reciprocal right of arbitration was not exercised by the parties.

Contemporaneously with the assignment and amendment of the limited partnership agreement, the general and limited partners executed and recorded on the Danbury Land Records an amendment of their certificate of limited partnership prepared by Lake Avenue's counsel in conformity with the requirements of §§ 34-33 and 34-10 of the Uniform Limited Partnership Act, General Statutes (Revised to 1975) §§ 34-9 through

34-38. In this recorded document, they acknowledged[1] that "[t]he Limited Partners have contributed the following amounts to the Partnership, namely: David T. Chase, $392,500; Jerome H. Gross, $186,000; and Lake Avenue Associates, Inc., $206,500." The reported "contribution" of the plaintiff, now shown to have 5 percent interest in the limited partnership, reflected his contributions prior to 1976 of $375,000, plus the contribution of $3500 on February 18, 1976, less consideration of $192,500 received for his assignment to Lake Avenue of 20 percent interest in the partnership. Lake Avenue was reported to be a limited partner with 20 percent interest and its "contribution" of $206,500 as a limited partner was computed by combining its purchase price of $192,500 and proportionate contribution of $14,000 in February, 1976.

On December 26, 1979, Lake Avenue notified the plaintiff of the exercise of its option under § 14.01 of the limited partnership agreement to purchase the plaintiff's remaining interest of 5 percent for $78,500. The offered price was determined by an independent accountant under § 14.03 (e) of the agreement pursuant to the formula specified in § 14.01. This provision fixed the price as the greater of (1) the capital contribution of the limited partner or (2) the credit balance of his capital account as of the end of the calendar month next preceding the date of notice of exercise of option, in this case, November 30, 1979. The accountant computed the plaintiff's capital contribution to be $78,500, which was greater than the capital account balance of $62,289.[2] The

---

[1] Although General Statutes (Rev. to 1975) § 34-10 required that this certificate of amendment be sworn to, that they failed to do. Instead, they merely acknowledged its execution to be their free act and deed. See *State* v. *Grant*, 176 Conn. 17, 23–24, 404 A.2d 873 (1978).

[2] On April 10, 1980, Chase sold his 25 percent interest in the limited partnership to Lake Avenue under a similar offer of purchase for his total capital contribution of $392,500.

accountant's computation of the plaintiff's capital contribution was made as follows:

| | |
|---|---:|
| Original capital contribution | $275,000 |
| Additional contribution | 100,000 |
| Total contribution as of January 31, 1976 | $375,000 |
| Less: | |
| Assignment of 80 percent on January 31, 1976 | 300,000 |
| Balance after January 31, 1976 | $ 75,000 |
| Additional contribution on February 18, 1976 | 3,500 |
| Capital contributions as of November 30, 1979 | $ 78,500 |

Lake Avenue's offer was refused by the plaintiff. He maintained that his remaining capital contribution, as reported in the recorded amendment of the certificate of limited partnership on March 22, 1976, was $186,000. In addition, the plaintiff now claimed that this amount "should be increased by cash retained by the partnership as reserves or used for capital improvements." When Lake Avenue refused the plaintiff's demands, this action commenced.

In the three counts of his revised complaint, the plaintiff alleged that the defendants had violated various fiduciary duties and certain provisions of the limited partnership agreement, including their refusal to purchase the plaintiff's interest for $186,000, and their failure to distribute accumulated excessive and unreasonable cash reserves. By way of relief, the plaintiff sought a dissolution of the partnership, a determination of its assets, an accounting of cash flow and damages.

The defendants denied these allegations and pleaded by way of special defense that the limited partnership was terminated under its provisions as of December 1, 1979, and that the reserves were accumulated with the knowledge of all parties. Additionally, the defendants counterclaimed for a mandatory injunction requiring the plaintiff to complete the sale of his interest in accordance with the partnership agreement and for a declaratory judgment that the interest of the plaintiff had ceased and terminated.

The trial court found that $78,500 was the amount of the plaintiff's remaining capital contribution on November 30, 1979, and the proper purchase price for his remaining 5 percent interest in the limited partnership. It concluded, therefore, that Lake Avenue's notice and offer of purchase, and the accountant's certification of capital contribution and capital account determining the purchase price, terminated the plaintiff's interest in the limited partnership as of November 30, 1979.

As to the plaintiff's further claims, the court found that in view of the broad powers granted by the partnership agreement to the general partner for the management of the partnership business, including the right to accumulate annual reserves, the plaintiff failed to prove by a preponderance of the evidence that he was entitled to any cash flow. Further, the court found that the plaintiff failed to prove by a preponderance of the evidence that the defendants breached any fiduciary duty or that he was entitled to a dissolution of the partnership or an accounting. In accordance with the defendants' requests as set forth in their counterclaim the court declared that the plaintiff's interest in the limited partnership terminated on November 30, 1979, and ordered him to execute the necessary documents for the sale of that interest to Lake Avenue upon tender of the sum of $78,500. The plaintiff's motion for further articulation of the factual and legal bases of the findings that the plaintiff was not entitled to any cash flow payments by way of damages or to an accounting was denied.

The plaintiff's first claim on appeal is that the trial court erred in holding that the proper purchase price for the plaintiff's interest was $78,500 where the agreement and the amended certificate of limited partnership provided that the purchase price was to be his capital contribution of $186,000. This claim is without

merit. The trial court found that the plaintiff's sale of 80 percent of his interest in the limited partnership included 80 percent of his capital contribution of $375,000. His remaining capital contribution on January 31, 1976, after the fractional assignment of his prior interest, was $75,000. This reflected his remaining 5 percent interest in the limited partnership. In February, 1976, his capital contribution was increased to $78,500.

As to the plaintiff's contribution of $186,000 reported on the recorded amendment of the certificate of limited partnership, the court found that there was no negotiation pertaining to that amount, or agreement that the sum represented the plaintiff's remaining capital contribution for repayment on a buyout by the general partner. The determination of the reported amount was unexplainable by the general partner, but the court found that it did in fact reflect the amount of the plaintiff's investment less the sum of $192,500 received for the sale of 80 percent of his interest. The court concluded, however, that "the $186,000 figure is meaningless in determining Mr. Gross' remaining capital contribution after the January 31, 1976 sale of 80% of his entire interest to the general partner."

The basic thrust of the plaintiff's argument before us is that the trial court failed as a matter of contract law to construe the term "capital contribution," for establishment of the purchase price of a buyout under § 14.01 of the limited partnership agreement, according to its ordinary and plain meaning and pursuant to its definition in § 1.13 as "sums contributed to the capital of the Partnership." In addition, the plaintiff claims that the ordinary meaning of "capital contribution in the amended certificate of limited partnership plainly, unambiguously and explicitly confirmed that the plaintiff's capital contribution, after the first purchase of his fractional interest by Lake Avenue, was $186,000,

the remaining amount of cash he had contributed to the limited partnership. Finally, the plaintiff argues that the trial court's determination that the amount of $186,000 assigned to his capital contribution was "meaningless" ignores the provisions of the Uniform Limited Partnership Act of 1976, General Statutes §§ 34-9 through 34-38q,[3] "and emasculates the express formula in the Agreement whereby the limited partner can recapture his investment when forced out by the general partner."

The correctness of the amended certificate of limited partnership as to the amounts of capital contributions by the limited partners is not before us, although a literal reading of the information suggests inaccuracies. The plaintiff fallaciously interprets the consideration of $192,500 received for the January 31, 1976, sale of 80 percent of his interest in the limited partnership as a return of capital contribution by the partnership. Concededly it was not that, but the payment to him from funds of Lake Avenue for purchase of that share of his limited partnership. Lake Avenue's payment to the plaintiff, in turn, was not a capital contribution to the limited partnership by it, but a payment to the plaintiff individually for the assignment of a fractional share of his limited partnership interest.

A limited partnership is a form of investment in an enterprise. Through his capital contribution, a limited partner becomes entitled to share in the profits and losses of the limited partnership. Its advantage is that his share of losses in the business or in payments to

[3] The revised Uniform Limited Partnership Act of 1976 was enacted in 1979, effective October 1, 1979. Public Acts 1979, No. 79-440. Section 60 (c) thereof, now General Statutes § 34-38 (c), provided that limited partnerships formed between October 1, 1961, and October 1, 1979, such as 1776, shall continue to be governed by the provisions of the original Uniform Limited Partnership Act, chapter 610 of the General Statutes, revised to 1979.

creditors will not exceed the amount of his capital contributions to the limited partnership. Subject to the limited partnership agreement, statutory provisions and the rights of creditors, a limited partner is entitled to the return of his capital contribution and he may assign or transfer his interest in the limited partnership.[4] By virtue of General Statutes (Rev. to 1979) §§ 34-24 and 34-27, any substituted limited partner, such as Lake Avenue, or mere assignee is entitled to the return of the assignor's capital contribution.

---

[4] "[General Statutes (Rev. to 1979)] Sec. 34-24. CONDITIONS FOR RECEIPT BY LIMITED PARTNER OF HIS CONTRIBUTIONS. (1) A limited partner shall not receive from a general partner or out of partnership property any part of his contributions until (a) all liabilities of the partnership, except liabilities to general partners and to limited partners on account of their contributions, have been paid or there remains property of the partnership sufficient to pay them, (b) the consent of all members is had, unless the return of the contribution may be rightfully demanded under the provisions of subsection (2) of this section, and (c) the certificate is cancelled or so amended as to set forth the withdrawal or reduction. (2) Subject to the provisions of subsection (1) of this section a limited partner may rightfully demand the return of his contribution (a) on the dissolution of a partnership or (b) when the date specified in the certificate for its return has arrived or (c) after he has given six months' notice in writing to all other members, if no time is specified in the certificate either for the return of the contribution or for the dissolution of the partnership. (3) In the absence of any statement in the certificate to the contrary or the consent of all members, a limited partner, irrespective of the nature of his contribution, has only the right to demand and receive cash in return for his contribution. (4) A limited partner may have the partnership dissolved and its affairs wound up when (a) he rightfully but unsuccessfully demands the return of his contribution or (b) the other liabilities of the partnership have not been paid, or the partnership property is insufficient for their payment as required by subdivision (a) of subsection (1) of this section and the limited partner would otherwise be entitled to the return of his contribution."

"[General Statutes (Rev. to 1979)] Sec. 34-27. ASSIGNMENT OF LIMITED PARTNER'S INTEREST. SUBSTITUTE LIMITED PARTNER. (1) A limited partner's interest is assignable. (2) A substituted limited partner is a person admitted to all the rights of a limited partner who has died or has assigned his interest in a partnership. (3) An assignee, who does not become a substituted limited partner, has no right to require any information or account of the partnership transactions or to inspect the partnership books; he is only entitled to receive the share of the profits or other compensation by

The capital contribution of a limited partner is a barometer measuring his interest in the limited partnership and the extent of his risk of loss. It is fixed to the extent that it remains constant, and it fluctuates with additions and withdrawals pursuant to the limited partnership agreement and the Uniform Limited Partnership Act.[5] While the amount of capital contribution is a matter of simple arithmetic, addition and subtraction, the value of a limited partner's capital contribution, similar to the valuation of capital stock invested in a corporation, changes with the vagaries of the business operation and of the market place. This valuation of the capital investment, or equity, is usually indicated, as here, on the partnership's records as his capital account.

The plaintiff misconstrues the nature of the two transactions, the former and the pending, between the parties. He considers each transaction as a return of his capital contribution, in combination, repayment of his full investment. The original assignment was a transfer of 80 percent of his interest by private sale on payment of an amount equivalent to a proportionate share of his capital account or equity. The pending transfer of his 5 percent interest is also by private sale, but payment is to be in an amount equivalent to his

---

way of income, or the return of his contribution, to which his assignor would otherwise be entitled. (4) An assignee shall have the right to become a substituted limited partner if all the members, except the assignor, consent thereto or if the assignor, being thereunto empowered by the certificate, gives the assignee that right. (5) An assignee becomes a substituted limited partner when the certificate is appropriately amended in accordance with section 34-33. (6) The substituted limited partner has all the rights and powers, and is subject to all the restrictions and liabilities of his assignor, except those liabilities of which he was ignorant at the time he became a limited partner and which could not be ascertained from the certificate. (7) The substitution of the assignee as a limited partner does not release the assignor from liability to the partnership under sections 34-14 and 34-25."

[5] See General Statutes (Rev. to 1979) §§ 34-9 through 34-38.

remaining capital contribution. The facts of this transfer he admits, but not the amount. Neither transfer involved the limited partnership as a party, but only the partners thereof privately. Neither transfer involved, in whole or in part, a return of the plaintiff's capital contributions. These transfers referred to the plaintiff's capital account and capital contributions only for purchase price determination under the terms of the limited partnership agreement, §§ 14.02 and 14.01, respectively. In neither case was the return of the plaintiff's capital contribution by the limited partnership to be made. Therefore, his claim at this time for return of his capital contribution in full from Lake Avenue in combined payment for the complete transfer of his interest is without basis in fact or law.

The plaintiff contends further that the trial court's finding that Lake Avenue was obligated to pay the plaintiff $78,500 to purchase his remaining partnership interest was clearly erroneous, citing Practice Book § 3060D (now § 4061). In support of this argument, the plaintiff refers to Lake Avenue's purchase of Chase's interest in the limited partnership for the amount of his total capital contribution of $392,500. This claim is without substance or bearing on the question before us.

The finding of the court establishing the purchase price of $78,500 to the plaintiff is fully supported by the evidence before the court. The purchase price of the buyout of Chase's total partnership interest under § 14.01 of the limited partnership agreement was computed by the parties in the same manner and by the same method that the trial court utilized, and we find correct, here in determining the purchase price for the plaintiff's remaining interest in the limited partnership.

In summary, the assignment of 80 percent of the plaintiff's 25 percent interest in the limited partner-

ship included the assignment of his right to a proportionate amount of his capital contribution, namely, $300,000; see footnote 4, supra; thus leaving a capital contribution balance of $75,000, to which must be added the subsequent contribution of $3500, for a total of $78,500. The trial court correctly found that this amount was what the plaintiff was entitled to receive upon the exercise of Lake Avenue's option to buy out the plaintiff's interest under § 14.01 of the limited partnership agreement.

Therefore, we conclude that Lake Avenue became a substituted limited partner as to 80 percent of the plaintiff's interest in the limited partnership on January 31, 1976, with the concomitant right to the return of such proportionate amount of the plaintiff's capital contribution, or $300,000. The amount of the plaintiff's remaining capital contribution was $75,000, to which he added $3500 on February 18, 1976. The present balance of the plaintiff's capital contribution in the amount of $78,500 is the price to which he is entitled on the pending transfer of his 5 percent interest in the limited partnership to Lake Avenue.

The plaintiff's remaining two claims of error require brief comment. His second claim is that the trial court erred in finding that the defendant's failure to distribute the total annual positive cash flow from 1976 through 1979 was not a breach of the partnership agreement. The court found that in view of the broad powers granted by the partnership agreement to the general partner for the management of the partnership business, including the right to accumulate annual reserves, the plaintiff has simply failed to prove by a preponderance of the evidence that his is entitled to any cash flow. His third claim is that the trial court erred in finding that such failure to distribute the positive cash flow constituted a breach of the general partner's fiduciary duty. As to this claim, the court also

found that the plaintiff failed to prove the breach of any fiduciary duty by a preponderance of the evidence. Both of these claims challenge the factual findings made by the trial court.

After the court rendered its judgment, the plaintiff filed a motion for further articulation and consideration of the factual and legal bases of its finding "that the plaintiff is not entitled to any cash flow payments by way of damages or an accounting." In particular, the plaintiff requested "that the court consider: (1) whether it was appropriate for the general partner to accumulate reserves in excess of $150,000; and (2) whether the financial compilations . . . sufficiently demonstrate that the plaintiff is entitled to at least $67,773, plus interest as specified in Exhibit A to plaintiff's posttrial memorandum, as damages for failure to make cash flow payments." The court denied the motion for articulation. At argument on the motion, however, the court summarily responded to the two questions propounded by the plaintiff by stating "yes" and "no," respectively.

Our review of these claims is controlled by the narrow "clearly erroneous" standard. See Practice Book § 4061; *Cookson* v. *Cookson,* 201 Conn. 229, 242–43, 514 A.2d 323 (1986); *Buddenhagen* v. *Luque,* 10 Conn. App. 41, 44–45, 521 A.2d 221 (1987).

On appeal, we cannot retry the case. It is our function only to review the proceedings of the trial court where an appeal is based on the sufficiency of the evidence to support a factual finding. See *Cookson* v. *Cookson,* supra; *Buddenhagen* v. *Luque,* supra. The trial court's failure to expound upon its factual findings does not constitute error when the only effect of such further articulation would be to present a more detailed recital of surrounding events which do not undermine

the basis for the trial court's decision. *Cookson* v. *Cookson,* supra, 243; *Trunik* v. *Trunik,* 179 Conn. 287, 288–89, 426 A.2d 274 (1979).

As for the plaintiff's second claim of error, from our review of the record we cannot say that the findings and conclusions of the trial court were legally or logically incorrect or unsupported by the facts, or that the evidence was insufficient for the court to rule as it did. The court's finding that the plaintiff was not entitled to any cash flow as provided in the limited partnership agreement was supported by testimony that the partners had agreed not to distribute cash flow and to spend the funds on necessary improvements of the partnership's motel. The court apparently found this evidence of waiver credible, and we cannot disturb that finding.

As to the plaintiff's third claim of error, we likewise conclude that the trial court's finding that Lake Avenue had not breached its fiduciary duty to the plaintiff is supported by the evidence in the record. The plaintiff's waiver of his contractual right to the distribution of cash flow likewise relieved Lake Avenue of its fiduciary duty to distribute said funds.

As to these further claims of error, we hold that the trial court's findings are not clearly erroneous.

There is no error.

In this opinion, DALY, J. concurred.

BORDEN, J., concurring. In this case, it was the trial court's function to find the facts. It did. Those facts are not clearly erroneous. I therefore concur in the result reached by the majority.