[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff wife married the defendant husband at Goshen, Connecticut, on June 25, 1976. Both of the parties have resided continuously in the State of Connecticut for at least one year up to the date of the filing of the complaint.
Four children were born to the wife during the marriage. All are issue and are minors, to wit:
Brock Francis Alexander Flanagan, DOB 10/13/77;
Blake Frances Lorese Flanagan, DOB 12/1/78; CT Page 1436
Connery Kelly Francis Flanagan, DOB 1/22/81;
Kellyn Sloane Frances Flanagan, DOB 12/23/82
The wife is forty one years of age and is by education a licensed practical nurse. Raising four children, however, has left her little time to practice her trade and has not worked since 1977. She also has testified that she would like to complete her schooling and get a bachelor of arts degree.
The wife claims that the constant berating she received from her husband caused her to file for divorce in 1989. Therapy was tried in early 1989, but to no avail. Her biggest complaint appears to be that her husband spent very little time with her after he came home. She is also opposed to joint custody on the basis that she was the primary custodian of the children and that it was not until the separation that her husband spent any time with the children, and that, at times, he was physically abusive to the children.
The defendant, who is a dentist, is forty five years of age and in apparent good health. Upon graduating from Georgetown Medical School, he purchased an existing dental practice and, from all accounts, has been extremely successful.
This case was tried over a period of six days. The major points of contention were as follows:
(1) The husband's request for joint custody which the wife opposes;
(2) The cause of the breakdown of the marriage;
(3) The date of the sale 49 percent interest in the dental practice to Dr. Doherty;
(4) Valuation of the various assets and actual income of Dr. Flanagan.
Addressing first the issue of custody, the Court is authorized, pursuant to Connecticut General Statutes Section46b-56(a), to ". . .make or modify any proper order regarding the education and support of (minor children) and of care, custody, and visitation. . ." In deciding such matters, the Court is mandated, under Section 46b-56(b) to be guided by the best interest of the children. The "best interest" standard allows for a flexible, individual adjudication. Faria v. Faria, 38 Conn. Sup. 37,40 (1982). Although the term is not clearly defined, decisional law indicates that the standard requires the trial court to determine which party will better foster the child's CT Page 1437 growth, development, and well being.
In searching for the best interests of the children, the Court considered the following factors: the age of the children; the emotional ties of the children to the parents and of the parents to the children; the parenting abilities of the parents; the home environment offered by each parent; the desirability of maintaining continuity of the existing relationships; and the fostering of a belief in the children, that the decisions concerning their welfare are equally being considered by both parents. Some of these factors are set forth in the General Statutes and others are discussed in various cases. See Cookson v. Cookson, 201 Conn. 229, 239 (1986); Howard v. Howard, 12 Conn. Law Tribune 622 (Cramer, J., August 5, 1986); or apply in the statutes of other jurisdictions which apply the "best interest" standard, e.g., 1984 Minn. Law 518.17.
Obviously, each case must be considered on its individual merits, but always with the goal of what is in the best interest of the children.
The situation here ;s not an unusual or any atypical one. Whenever parents are separated, one or both will assert a "territorial" right to the child or children.
From the evidence presented, this Court is overwhelmingly convinced that the interests of the children would be best served by an order of joint custody. The record reveals that both parties relate and react wonderfully with the children and that both parties are actively involved in the children's lives. For this reason, important decisions concerning the welfare of the children should be made jointly.
Similarly, the Court is convinced that the major cause of the breakdown of the marriage was the wife's attraction to Doctor Collins. The Court need not recite all of the factors which has led to its conclusion. This is not to say that other factors did not contribute to the breakdown. However, the attraction with Dr. Collins was the single most injurious factor to the survival of the marriage.
Fault, however, is only one of the factors which the Court must consider. When making an award of alimony, the Court is directed by the legislature to consider the following factors: "the length of the marriage, the causes for the. . . dissolution of the marriage. . .the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the Court may make pursuant to Section 46b-81 (assignment of property and transfer of title). . ." Section 46b-82 of the Connecticut CT Page 1438 General Statutes. These factors to be considered in awarding alimony under the statute closely parallel those under former case law. No one factor is controlling. The relevant considerations vary from case to case and depend upon the circumstances of the parties. Chamblis v. Chamblis, 171 Conn. 278,279 (1976). Although the Court concludes that the major fault for the breakdown was the result of the wife's behavior, nonetheless, alimony should not be awarded as a reward to a spouse for virtue or as punishment for wrongdoing.
The Court is concerned with the testimony relative to the date of implementation of the sale of the defendant's 49 percent interest in the dental partnership to Dr. Doherty. Dr. Flanagan testified that the agreement was implemented in 1986, but not memorialized in writing until January 1, 1989 (Defendant's Exhibit 3). Equally perplexing to the Court is the failure to make any mention of the sale to the plaintiff and to a subsequent party interested in purchasing the practice. None of these factors, standing alone, raise any significant doubt, however, viewed collectively, a reasonable doubt arises as to credibility on this issue.
Equally perplexing to the Court is equating the reported income with the lifestyle of the parties. Even before the sale of a part of the dental practice, the accumulation of capital and personal expenditures did not properly correlate with the testified income.
The lavish spending on travel and entertainment, albeit legal, nonetheless is reflective of disposable income which is available to Dr. Flanagan.
Finally, the Court makes these additional findings. The reasonable market value of the marital home is $300,000. The value of the commercial lot on Cantor Drive, the Court finds to be $125,000, and the Washington, D.C. property, $60,000.
Taking into consideration all of the testimony and exhibits and the factors mandated in Connecticut General Statutes Sections46b-81, 46b-82 and 46b-84, the Court orders as follows:
(1) The marriage has broken down irretrievably, there is no prospect for any reconciliation, and a decree of dissolution may enter.
(2) Joint custody of the children is hereby decreed with physical custody in the plaintiff wife. The husband shall have the following rights of visitation:
a. Alternating weekends from Friday at 5:30 p.m. to CT Page 1439 Sunday at 7:00 p.m. Plaintiff must be notified by 6:30 p.m. on Friday that he may be late. Failure to do so may, at the wife's option, abort that weekend visitation.
 b. Tuesday and Thursday evenings, following the weekend visitation, from 5:30 p.m. until 8:00 p.m. and on Thursday evening, preceding the weekend visitation from 5:30 p.m. to 8:00 p.m. Plaintiff must be notified by 6:00 p.m. that he will be late. Failure to do so may, at the wife's option, abort that evening's visitation.
 c. Commencing Thanksgiving 1992, and on even numbered years thereafter, the defendant shall have the children from Wednesday at 5:30 p.m. to Sunday at 7:00 p.m.
 d. Commencing Christmas Eve day 1992, from noon to 8:00 p.m. and on even-numbered years thereafter, and in odd-numbered years from 8:00 p.m. Christmas Eve day through January 1 at 7:00 p.m. I
 e. The month of July, at which time the wife will be given reasonable telephone access to the children.
 f. Notwithstanding the above schedule, Mother's Day shall always be reserved for the wife and Father's Day for the husband.
 g. Commencing February 1992, and on even years thereafter, the father shall have the children during the school vacation, and on odd years he shall have visitation during the April vacation.
All notices required to be given above shall be directed by the defendant directly to the plaintiff.
(3) Husband shall pay as child support to the wife the sum of $200 per week per child. Because of the husband's high income, the Court finds that the guidelines are inapplicable.
(4) Husband shall maintain health insurance for the children and shall pay for all uninsured and unreimbursed health expenses, including, but not limited to, prescriptions, surgery, psychiatric, psychological, counseling, optometric and ophthalmological expenses. These orders are entered subject to the provision of Connecticut General Statutes Section 46b-84(c). CT Page 1440
(5) Husband shall pay to the wife as periodic alimony the sum of four hundred dollars per week until the happening of the first of the following events:
a. Remarriage by the wife;
b. Cohabitation by the wife;
c. Death of either party;
d. Seven years from the date of this decree.
Alimony shall be nonmodifiable as to term.
(6) The defendant husband shall convey, by quit claim deed, all of his right, title and interest in the marital home located in Storrs, Connecticut, and the Cape Cod property to the wife. She shall be responsible for the payment of the mortgage, taxes, etcetera, and shall hold the husband harmless and indemnify him from any and all claims made as the result of the nonpayment of those obligations.
(7) The husband shall, within sixty days, transfer to the wife the sum of $155,000 from his IRA.
(8) The husband shall further pay to the wife as property settlement, the sum of $300,000, which sum shall be paid as follows:
a. $100,000 within sixty days
 b. The balance in increments of $25,000 per year commencing August 1, 1992, and on or before the 1st day of August on succeeding years
(9) Neither party shall permanently remove the children from the State of Connecticut without first giving the other party at least sixty days notice of his or her intention to do so.
(10) Each of the parties shall be responsible for his or her own attorney's fees and costs.
(11) The husband shall provide for the benefit of the wife, at his cost, medical insurance for a period of one year.
Mihalakos, J.