[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On April 17, 1990 a judgment of dissolution was entered by Steinberg, J. A short time later, the defendant filed a motion for modification of the child support order alleging a substantial change of circumstances. Thereafter the plaintiff moved that the court find the defendant in contempt of the court's orders relating to alimony and child support. On July 18, 1990 the trial court granted the defendant's motion and vacated its child support order, and also calculated an arrearage of child support due. The plaintiff appealed and the appellate court at 25 Conn. App. 693 (1991) stated:
 The judgment, insofar as it compels post-judgment evaluation of the parties and minor children, is reversed, and the post-judgment orders vacating the child support award and relating to the calculation of the arrearage due are set aside and the case is remanded for further proceedings consistent with this opinion.
On April 26, 1991 the plaintiff filed a motion for modification requesting a change of custody of the children to the plaintiff wife alleging there has been a substantial change of circumstances. All matters were heard during two days of trial plus a special session for closing arguments.
The two children who are the focus of this custody dispute are Shauntae Savage, who will be six years old on June 21 of 1992 and Brittany Savage, who will be five years old in October of this year.
At the trial the court heard from the parents of the children, their respective new spouses, a psychologist and the court was assisted with a report from an attorney appointed to represent the minor children. In a close reading of this CT Page 3632 court's previous dissolution opinion, it is apparent that the court struggled with the issue of custody and based its decision on what was in the best interest of the children at the time. Now, within a relatively short period of time, this court is once again asked to make a determination about which parent should have custody of the children.
Here, the plaintiff, who is the non-custodial parent, must prove by a fair preponderance of the evidence that a transfer of custody is in the best interest of the children. Cookson v. Cookson, 201 Conn. 229 (1986). This court must find that there has been a material change of circumstances which alters the court's findings of the best interest of the children. Trunik v. Trunik, 179 Conn. 287 (1979).
In reviewing the testimony of the parties at trial this court notes some of the positive facts similar to both sides of this dispute. Each of the parties have either remarried or are about to be remarried. In both situations the new partner lends to a stabilization of the newly-combined families that will benefit the children. The children themselves, from the testimony heard by the court, are doing well despite the "ping-ponging" of them with the present visitation schedules and the fact that they are in the center of a subtle and not so subtle tug of war of the biological parents. Further, even there was a vast amount of negative conduct testified about for each of the parents, this court senses some positive maturation on behalf of both parties.
In order for this court to support its decision a close look at both parents and their family structures is necessary. Since the time of the dissolution Karen Savage Lamere has remarried and given birth to a son. Her new spouse struck this court as someone who will positively add his resolve to help this conflict abate. In evaluating Karen's testimony this court finds that her past drug activity and her involvement with its tawdry cast of characters seems to be ended. Allan Carter, Ph.D., saw no evidence of continuing cocaine use during his examinations of Karen. However, both experts, along with the court, found that she is still consumed with her hatred of her ex-husband Wallace and that her attitude affects the children. Counsel for the children felt that Karen actively coached the children to do things against the father and that she was still fighting "old battles" with her ex-husband. Actions such as going to the defendants home with a video camera and having the children baptized without informing the defendant were done purposely to hurt her ex-husband or were so thoughtless that they had the effect of doing so. CT Page 3633
The defendant is a man who has held the same job for 15 years. An admitted alcoholic with a violent temper, he attempts to control both by attending AA and NA meetings on a weekly basis. Of deep concern to this court is his admission that he reverted to drinking for a significant period of time during the end of 1991. Along with the resumption of alcohol came two troubling acts of violence. His version of what happened during a confrontation with the plaintiff and her new spouse was just not believable. During that same period he also got into a serious and heated discussion with his then girlfriend which was alcohol-driven. Consistent with the professionals' opinions the defendant seems to be over the psychological in-fighting with his former wife. This court finds that he is a person who genuinely wants to get on with the next phase of his life in cooperation with the plaintiff. However, his relationships with his children was evaluated differently by the psychologist and counsel for the children. Dr. Carter in his report gave considerable weight to how the children acted when in the presence of their father, noting . . . "while with him, both children (and especially Shauntae) seemed wary, constricted, dependent, and somewhat depressed. Shauntae was mute and clung physically to Mr. Savage. As soon as he left the room, however, both children brightened up and became more spontaneous and able to relate." Attorney Murphy, in contrast, found that the children related well to their father.
The testimony of Dr. Carter was helpful to the court. He, along with this court, found this a very difficult case to decide. He found the parties to each possess positive and negative qualities. His concerns with Mr. Savage were two-fold, (1) . . . Mr. Savage's propensity to relapse into active [alcohol] addiction and all of the things that go with that, the depression, the irritability, and the effect on the children. (2) He also gave weight to the children's preference to be with the mother and not the defendant. Dr. Carter felt the defendant understood and possessed a "broader psychological perspective" that his negative relationship with his ex-spouse, if continued, would hurt the children. In reviewing the testimony of Dr. Carter this court finds that he based his recommendation of custody not on the positive aspects of each of the parties but on the least negative factors each had to offer.
As with Dr. Carter the defendant's ability to resume his drinking at any time is very troubling to this court. The record speaks strongly that when the defendant is drinking, his family, especially the children, can be hurt emotionally and possibly physically. Of equal concern to the court is the plaintiff's past history with drugs and the facility of CT Page 3634 returning to that lifestyle at any time. In rendering this court's decision great weight has been given to the plaintiff's dislike/hatred of the defendant. Her seeming inability to control her impulses to punish her ex-spouse, even when they directly or indirectly hurt the children, has been taken into consideration by this court. When parents elect to consciously use their children through calculated acts of manipulation against their former spouse a court must react to preserve the best interest of the children for the future. As part of this court's order, the issue of the defendant's alcoholism must be addressed. It is a finding of this court that if the defendant resumes drinking at any time it will be treated by the court as a substantial change of circumstances warranting a further hearing by this court.
The court is also aware that its decision is contrary to Dr. Carter's view that the children "feel more comfortable and secure in the La Mere household." Recognizing the importance of two children bonding with their mother, Dr. Carter still was somewhat ambivalent in his findings by stating "I don't believe that this suggested custody arrangement necessarily represents the final disposition for these children." Dr. Carter in his report recommended that Shauntae (the court sees no reason why Brittany should not be included) be evaluated at Newington Children's Hospital. Mindful of the post-judgment limitations set in the opinion of Savage v. Savage, 25 Conn. App. 693
(1991) this court asks the parties to cooperate and bring the children to Newington Children's Hospital for evaluation. It will be up to the children's attorney to bring the proper motion to the court if the situation warrants it.
It is the court's finding that the plaintiff has failed to prove that the transfer of the custody of the children to her would be in their best interest.
The court will make the following orders:
1. That by agreement of the parties the defendant's arrearage to the plaintiff is $1,260.00 relative to child support and alimony through January 10, 1992.
2. That visitation be alternating weekends from Friday after school to Sunday night at 6:00 p. m., one after school day per week including dinner and then the children will be returned to the custodial parent, alternating school vacations, alternating holidays including Christmas, Easter and Thanksgiving, and that the plaintiff have custody for three weeks per summer. In accordance with this order the first holiday will be Thanksgiving, at which time the plaintiff shall start the visitation rotation. CT Page 3635
3. That the defendant maintain medical insurance for the children with the parties dividing equally unreimbursed medical, dental, optical, orthodontic, psychiatric, psychological and prescription expenses.
4. That the plaintiff transfer the marital premises immediately, as ordered by the court, and that the defendant execute a $12,500 mortgage note at 6% interest payable at the sume of $138.78 per month for 120 months, commencing May 1, 1992. No interest shall have accrued to the date of this order due to the failure to consummate the judgment degree.
5. That the plaintiff pay to the defendant $25.00 per week, per child as child support. The effective date of the child support shall be May 1, 1992. Each attorney shall agree to any set-offs of money due and owing each party. The child support orders of this court shall be subject to modification in accordance with the guidelines.
NORKO, J.