[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution brought by the plaintiff wife against the defendant husband. The parties met in January of 1987 and married in May of 1987 in Connecticut. The plaintiff had been married once before and had three children of that marriage, Justin born January 14, 1977, Chaldea born January 11, 1981 and Jessica November 29, 1986. The defendant had been married twice before but had no children. After the parties were married, the defendant adopted the plaintiff's three children in November of 1988.
The parties have lived in Connecticut for more than one year prior to the bringing of this action. Neither party has been the recipient of any local, state or federal aid.
On November 17, 1989, the parties had a son, Joseph, and on July 25, 1991, a daughter, Mary Catherine. These are the only children of this marriage.
The parties separated in January of 1993, and the plaintiff brought this action originally for a separation and then amended it to request a divorce together with custody, alimony and support.
The plaintiff, who is 39 years old and is apparently in good health except for some problems with her back, is not presently working. During the marriage, she did run a religious article store which was apparently not profitable in that the defendant testified to bailing it out on occasion. She also has done some babysitting and now has a license to provide day care; however, the day care must occur in an CT Page 10732 approved facility, and at the moment, the home in which she is living is under foreclosure with a law day in December of this year.
The defendant is a lawyer, a partner in a two man law firm in New Milford. He is 47 years old and appears to be in good health. While the law practice appears to have been successful, the defendant fell behind in the payments on the mortgage on the marital home as a result of which the house is being foreclosed. He claims he could not pay the mortgage and the taxes and support the family adequately on his income. It does appear that his income has gone down in the past year while this case has been on trial or in the process. His office stationary indicates he is admitted to practice in New Jersey as well as Connecticut, and he is a graduate of Fordham Law School.
The cause of the breakdown of the marriage appears to be one of incompatibility. The court did not find enough evidence to assign the blame for the breakdown to either party, and therefore will treat this as a no fault divorce.
On the issue of custody, the parties agree that physical custody should be with the plaintiff (at least for six months according to the defendant's request for relief). However, the plaintiff wishes sole legal custody as well as physical custody and the defendant wishes joint custody with a review in six months to see if the plaintiff has fulfilled the defendant's requirements with respect to what he conceives to be her negative influence on the children with respect to him.
It is apparent that the children are comfortable with their mother and they are well taken care of. There is no reason for taking physical custody from her and there is certainly no reason, in this case, for joint legal custody. Joint custody would require that the parents are able to communicate civilly with each other, which these are not. It would also require that there be either an agreement of the parties or a finding by the court that it would be in the children's best interests to have joint custody, and this court does not feel it would be. Also, where one party asks for joint custody and the other seeks sole custody there is a provision for a motion for conciliation which was not acted on here. Consequently, the court is restricted to sole custody and it appears to be in the best interests of the children in the court's opinion that the plaintiff have sole custody and the defendant have liberal visitation as hereinafter set forth. See Cabrera v. Cabrera,23 Conn. App. 330, 520 A.2d 1227 (1990); Timm v. Timm, 195 Conn. 202, 1985.
On the issue of visitation, it does appear that the oldest child, Justin, now beyond the court's jurisdiction having reached the age of 18 CT Page 10733 and having graduated from high school this past June, is not now visiting at his choice. The court has no power to order him to do so. As far as Chaldea is concerned, she also is not now visiting by her choice after having refused to do so previously. Jessica has also not been visiting but has gone to the defendant's condo with her mother who takes the children there in their van. Jessica sometimes will go in with her mother while her mother is there and then leave with her mother. It appears that Jessica is influenced by her older sister, Chaldea, but whether ordering her to visit would be helpful is not clear. She certainly should be encouraged to visit as should Chaldea since these children have no other father legally than the defendant. Their biological father's rights were terminated when the defendant adopted them. And they do have both a right to and a need for a father.
The only way in which joint custody could be ordered would be were the attitudes of the parties towards each other to change. That change can probably only be obtained through counseling. However, both need to understand that they need counseling. Both appear to feel that the other needs counseling. The defendant in particular has outlined a whole course of counseling for his wife and his children but not for himself. He appears to accept no responsibility for the marital breakup. Until he does so, there is little chance that there will be successful counseling or a basis for changing the order of custody.
On the financial matters, the marital assets appear to consist of the marital home, which is under foreclosure and for which there seems to be no funds sufficient to redeem it, and a pension which the defendant acquired prior to the marriage now valued at $166,000.
The only other viable asset at the moment appears to be the van which the plaintiff is driving and which the defendant agrees she should have, but of course she must also keep up the payments on it and pay the taxes for it after the defendant has brought the payments up to date. The defendant's car is paid for from his business which leases it at some $400 plus a month.
A perusal of the defendant's ledger from his business indicates a net income of $1194.55. The plaintiff's affidavit reveals a net income of $43.71 from which must be deducted $5.00 a week for day care. This leaves a total net of $1233.20. The guidelines provide $486 as appropriate child support for four children for an income of $1230 a week. This would appear to require the defendant to pay $486 a week in support.
The defendant has a buy-out agreement with his partner which is CT Page 10734 supported by life insurance policies in the amount of $150,000.
The defendant also has health insurance since he has requested that the psychiatrist or counselor to be appointed to be used for counseling be a member of the network of his insurance policy.
After reviewing the evidence, the family relations report, the evaluations by Doctors Horowitz and Welch, and the provisions of §§ 46b-82, 46b-81, 46b-84, 46b-81 and46b-56A, the court makes the following findings and orders:
1. Both parties have resided in this state for more than one year prior to the institution of this action, and the court therefore has jurisdiction. Neither party has been the recipient of local, state or federal aid.
2. The marriage has broken down irretrievably without any hope of reconciliation and it is hereby dissolved.
3. Sole, legal and physical custody of the four children, to wit: Joseph, Mary Catherine, Jessica and Chaldea, is awarded to the plaintiff with visitation by the defendant as follows:
For Joseph and Mary Catherine:
a. Every other weekend from Friday at 4:30 p. m. until Sunday at 5:00 p. m. and every Tuesday and Thursday from 4:30 p. m. until 7:30 p. m.
b. Where the weekend visitation is followed by a holiday on Monday, the defendant may keep the children until 5:00 p. m. on Monday.
c. The court will not order Jessica to visit the defendant but does order the plaintiff to encourage her to visit him.
d. The court will not order Chaldea to visit the defendant either but again the plaintiff should do all she can to encourage her to visit him.
To the end that visitation will eventually occur between the defendant and Chaldea and Jessica and to promote a better relationship between plaintiff and defendant, both in relation to each other and in relation to the children, the court orders all of CT Page 10735 the parties, the plaintiff and the defendant and all of the children except, of course, Justin to engage in counseling with a therapist selected by the two counsel for the children and financed by the defendant's health insurance.
Visitation between the defendant and Jessica and the defendant and Chaldea shall not begin until the therapist determines that it is appropriate and indicates, also, the extent to which it shall occur.
4. (a) In addition to the regular visitation schedule set forth above, on school vacations the defendant may have visitation with Mary Catherine and Joseph for half of the days included in the vacation beginning with the day after the school closes to the day before the school opens. He may have them overnight during the days he has the visitation. The week should be divided as follows: for the first school vacation, his visitation shall begin on the day after the school closes and end four days later assuming the vacation is a week at 5:00 p. m. The following school vacation the reverse shall be true with the plaintiff retaining the children until the fifth day and on the fifth day the defendant shall have them until the day before the school opens.
(b) Holidays of Easter, Thanksgiving and Christmas shall be alternated as follows:
(1) the Easter/spring break beginning with Good Friday shall be shared equally with the plaintiff for Mary Catherine and Joseph with the children remaining at home from Good Friday until 2:00 p. m. on Easter Sunday and the defendant having visitation from 2:00 p. m. Easter Sunday until 7:00 p. m. that day and thereafter for the number of days equal to one half of the total days of the vacation excluding Easter Sunday up to two days before school begins;
(2) the night before Thanksgiving Mary Catherine and Joseph shall be at home and stay through to 2:00 p. m. Thanksgiving Day. The defendant shall have visitation with them from 2:00 p. m. until 6:00 p. m. in the afternoon. If he has visitation for the following weekend, he may then have the children through the weekend;
(3) on Christmas, the plaintiff shall have Mary Catherine and CT Page 10736 Joseph on Christmas Eve until noon Christmas Day and the defendant shall have them from noon until 5:00 p. m. the following day. The balance of the Christmas vacation shall be divided with the defendant keeping the children for half of the remaining days in the vacation following Christmas Day and the plaintiff having the balance of the vacation. Measurement of the total amount of days in the vacation shall begin the day after the vacation starts and end the day before the vacation ends, that is before school opens.
(c) The following holidays which are not included in the defendant's vacation shall be alternated as follows:
(1) the defendant may visit Mary Catherine and Joseph in 1996 on Martin Luther King Day and Memorial Day; in 1997 on July 4th and President's Day and alternately thereafter.
(d) Where the holiday falls on a Monday next after a weekend visit, the defendant shall have that holiday as part of his visitation.
(e) On the birthdays of Mary Catherine and Joseph, the defendant may visit with them for two (2) hours on the birthday which two hours shall not conflict with any birthday celebration already planned unless the plaintiff invites him to the celebration.
(f) The defendant may also visit with Chaldea and Jessica on their birthdays if they agree for two hours also but not to conflict with any celebration planned by the plaintiff unless she invites him.
5. The defendant shall also have two (2) weeks of vacation with the children during the summer beginning with the close of school in June and ending a week before school starts in August. The weeks shall not be consecutive, however, and he shall notify the plaintiff by May 1st of each year which weeks he plans to use.
6. Transportation to and from visitation shall be by the defendant.
7. The plaintiff shall have one week in which the defendant shall not visit the children, that week to be chosen by her two months before she exercises it, and she shall notify the defendant in writing as to which week she chooses for that purpose. This will eliminate CT Page 10737 any visitation the defendant will have during that period but it shall not be a week involving Thanksgiving, Christmas or Easter.
8. The children who are subject to the visitation order will visit with the father on Father's day and with the mother on Mother's Day.
9. (a) The defendant shall pay $486 in child support for the four children in accordance with the guidelines until the oldest has reached the age of 19 or has graduated from high school, whichever first occurs. At that time, the parties' income shall be recomputed so as to determine the proper amount of support the defendant is obligated to pay for the remaining children under the guidelines. Thereafter, as each of the children reaches the age of 19 or has graduated from high school, whichever first occurs, the parties shall go through the same procedure as set forth above. If they are unable to agree on the result of the recomputation and the determination of the support order on each occasion, they may apply to the Family Relations Office for assistance, and if they are unable to accept that assistance or are unable to accept Family Relations' recommendation, they may then apply to the court who will make the determination for them.
(b) The defendant shall also provide the plaintiff with reports of his income every three months from the date of the judgment in this action since it is contemplated that his income will increase and with it the amount of appropriate child support.
10. The plaintiff shall notify the defendant of any major health problems which the children may have and for which they require medical or hospital attention.
11. ALIMONY: The defendant shall pay the plaintiff the sum of $250 per week until her death, remarriage or cohabitation within the provisions of the Connecticut General Statutes, and the defendant shall, therefore, retain the ownership of his pension which is a protection for his future.
12. The defendant shall also continue to provide health insurance for the children. He shall also provide health insurance for the plaintiff for a period of three (3) years or until she obtains employment which provides her with insurance or which provides her with sufficient income to pay for the insurance the defendant is providing, whichever occurs first. CT Page 10738
13. The defendant shall also provide life insurance making the plaintiff irrevocable beneficiary of his present policy in the amount of $50,000. He shall also make the children irrevocable beneficiaries of his life insurance policy in the amount of $100,000.
14. All unreimbursed medical, dental, hospital, psychiatric, orthodonture and ophthmological bills shall be paid by the defendant until such time as the plaintiff obtains employment with an income of at least $20,000 a year.
15. The defendant shall be responsible for all of the liabilities on both affidavits since the plaintiff has no income at the present time and the amount of support and alimony will not be sufficient to pay on these liabilities.
16. The defendant shall convey to the plaintiff all his right, title and interest in the van which she is presently driving and he shall bring the payments on the van's loan up to date. Thereafter, the plaintiff shall be responsible for the payments on the van's loan as well as its maintenance and upkeep.
17. Fees for the attorneys for the minor children shall be the sole responsibility of the defendant and shall be paid on a monthly basis of $100 each per month beginning two weeks after this judgment becomes final. The court orders the payment of these fees as part of the support of the children.
18. The defendant shall also contribute to the plaintiff for her attorney's fees the sum of $2500, which may be paid over a period of a year in monthly installments and shall be paid within one year.
19. Neither party shall remove the children from the State of Connecticut without the written consent of the other or an order of the court.
20. As a result of the foreclosure of the marital home, the plaintiff will need other accommodations which may be difficult to find. The defendant shall be responsible for paying the security deposit and first and last months rent for any premises that the plaintiff is able to find and appears suitable.
21. The defendant shall hold the plaintiff harmless for any tax CT Page 10739 liabilities which may have been incurred during the marriage down to the time of the final judgment in this case.
22. The defendant shall also be solely responsible for any debt resulting from the foreclosure of the house, that is, should the sale price not be sufficient to cover the outstanding mortgages and expenses of sale.
23. All of the household goods in the marital home shall be the property of the plaintiff except for the following:
a. defendant's small oak bureau;
b. defendant's leather jacket;
c. defendant's rocking chair and brown corduroy chair;
d. books, rugs and riding helmet in attic; and
e. brown cashmere blanket.
24. A wage execution order shall issue for both the alimony and support orders.
It is so ordered.
MARGARET C. DRISCOLL STATE TRIAL REFEREE