[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I. The Dissolution of the Marriage
It is found that all of the allegations of plaintiff's complaint have been proven, that the marriage has broken down irretrievably, and the marriage is ordered dissolved for that reason.
II. The Marital Estate of the Parties
Determining the nature and value of the marital estate is almost without exception a relatively uncomplicated task. This case marks the exception. The formation of many companies by the defendant, his acquisition and sale of numerous properties under various ownerships over the years, his borrowing from and adding to various accounts, his secrecy with businesses wherein he had named plaintiff as an owner, have all made it extremely difficult or the court to establish with any degree of comfortable certainty exactly what it must equitably distribute. That defendant has submitted three different financial affidavits over the course of this four day trial and that his total assets have decreased by almost $200,000 during that period provide a small hint of the complexity of the problems stemming from defendant's financial machinations.
With this as background, the court determines the distributable marital estate of the parties to be as follows: CT Page 8326
A. Positive Valued Marital Estate
 Plaintiff
 No. 106 Maple Hill Avenue Newington, CT value $160,000
 less 1st mtg. 37,224 less 2nd mtg. 10,000 Judgment 89,435 -------- $136,659
equity $23,341
 No. 969 New Britain Avenue Rocky Hill, CT value $150,000
 less 1st mtg. $54,000 blanket mtg. 10,000 Tax liens 4,000 -------- $118,000
equity $32,000*
 1994 Volvo #940 $14,000-$2,447 loan 11,553 Misc. personal property and furniture — checking and savings accounts 550 ------- TOTAL $67,444
Defendant
 1975 Jaguar JC $2,500 Household goods, furniture — Diamond ring 300 Misc. firearms, etc. 2,700 People's Bank S/A 150 Small sail boat 50 Misc. tools, maintenance and landscape equipment 5,000 ------ $10,700
Total marital estate of value $78,144 CT Page 8327
B. Negative Valued Marital Estate
 Plaintiff
 No. 180 Giants Neck Rd. Niantic, CT value $100,000
 less 1st mtg. $86,525 less 2nd mtg. 45,000 Blanket mtg. 10,000 -------- $141,525
equity — $41,125
sub total ($41,125)
Defendant
 No. 22-24 Bonner Street Hartford, CT value $35,000
less blanket mtges $665,000
 No. 268-270 Hillside Ave. Hartford, CT value $35,000
less blanket mtg. value $665,000
 No. 63-65 Glendale Ave. Hartford, CT value $35,000
less blanket mtges $665,000
TOTAL EQUITY FOR ALL 3 PARCELS ($560,000)
 No. 25-27 New Britain Ave. Hartford, CT value $84,000 CT Page 8328
less mtg. 85,000
equity ($1,000)
 No. 18-20 Julius St. Hartford, CT value $80,000
less mtg. 80,889
(owned by Keystone Properties) equity ($889)
 No. 1 New Britain Ave. Hartford, CT value $125,000
less mtgs. $208,390
 (owed by Keystone Properties) equity $(83,390) ---------- Subtotal $(645,279)
Total Net Equity $(686,404)
III. A Review and Evaluation of the Evidence as it Relates to the Provisions of Sec. 46b-81c C.G.S.
A. General Background Information
The plaintiff wife and the defendant husband were married in Rocky Hill, Connecticut on September 29, 1984, almost thirteen years ago. Plaintiff is thirty eight years of age while defendant is forty eight. This was plaintiff's first marriage while it was the second for defendant. The parties have two children issue of the marriage, a son David F. who is ten years old, and a daughter Emily C. who is now seven.
Plaintiff has a B.S. degree from Quinnipiac College and subsequent to her marriage also obtained an M.A. degree from the University of New Haven. When she first met defendant in 1979 plaintiff was employed as a paralegal doing title searches for the law firm of Heyman, Sparse and Droney. She continued in this capacity until the birth of their first child in 1987. In 1994 she became a substitute teacher in the Newington school system where, in 1996, she was appointed to a full time position as a kindergarten teacher at the Greene School. Her current, financial affidavit indicates a gross weekly income of $638 with a weekly CT Page 8329 net after the usual deductions of $409.
Defendant has a high school education, and when the parties first met was described by the plaintiff in her testimony as "successful and established" in the business of leasing and selling automobiles. During the marriage defendant's principal source of income was from a corporation which he formed in 1981 known as B.W.B. Associates. From the evidence the court has deducted that this corporation obtained its income from the management of rental property in all its various aspects. While all of the stock in the company was in plaintiff's name, "she never", in defendant's words, "had any interest in it and never received any money from it". Defendant had 23-25 employees of the company at one time. Defendant testified that the business ended on May 31, 1996 and presently owes him $80,000.
At the present time defendant is working at a restaurant and, bar in which he has an interest. His current financial affidavit reflects a gross weekly wage of $175 with a weekly net after the usual deductions of $158.
Of equal interest the court notes is his reported gross weekly income of $1,000 on his April 12, 1996 affidavit and of $800 weekly on his affidavit of February 11, 1997. Further, defendant testified that at the time of his marriage and for about four years thereafter he sold Jaguar automobiles, selling between 100 and 200 cars per year and earning between $100,000 and $125,000 annually.
B. Health
Both of the parties appear to be in reasonably good health.
C. Fault
Responsibility for the breakdown of the marriage rests without question with defendant. A review of the court's notes of the testimony of the parties on this factor reveals the following:
Plaintiff: She testified that defendant was very controlling, made all family decisions, had a violent temper, frequently referred to her as "stupid, and unsupportive", had a fetish with knives, disliked her parents and other members of her family, used vile language indiscriminately, withheld family CT Page 8330 financial information from her, and in general made their married life unendurable.
Defendant for his part testified in generalities on this issue, stating that the marriage had become very spiteful, that he had had a stressful relationship with his in-laws and that the parties mutually agreed to separate. The parties ceased living together in August, 1995.
The court found the testimony of the plaintiff most credible on this as well as all other issues and has no hesitancy in finding that defendant was solely responsible for the irretrievable breakdown of their marriage.
D. Pre-Marital Property — Inheritances
Plaintiff testified that at the time of the marriage she had equity in a condominium in Glastonbury which she later put into the marital home. She also owned a Toyota automobile which she valued at $9-$10,000.
Defendant stated that before the marriage he was involved in a family owned business known as General Gear Co. The business was sold in 1983 and as a result defendant received $100,000. This money was used to finance various business ventures in which he was involved; in particular the acquisition of rental property.
During the course of the marriage defendant received an inheritance from his mother's estate in the amount of $80,000 which at one point in his testimony he stated he advanced to BMB Associates, one of his many business ventures. In addition to stating "it owes me $80,000", he also listed that amount as a debt due him on the first of his three financial affidavits filed with the court.
E. Other Factors
Defendant has a greater opportunity than does plaintiff of the future acquisition of capital assets and income. He recently filed a personal bankruptcy petition but its present status is uncertain. At any rate his liabilities exceed those of the plaintiff at the moment.
The parties have contributed equally in the acquisition, CT Page 8331 preservation, or appreciation in value of the marital estate.
F. Conclusion
Having reviewed and weighed all of the evidence as it pertains to Sec. 46b-81c C.G.S. and having given special consideration to such predominating factors as the length of the marriage, the relative future opportunities of the parties for the future acquisition of capital assets and income and responsibility for the breakdown of the marriage, this court orders that the positive valued marital estate of the parties be distributed in the following manner, i.e.
Plaintiff 70%
Defendant 30%
Concerning the negative valued marital estate, the court notes that plaintiff in her proposed orders has expressed her complete lack of interest in any part of it, requesting only that defendant hold her harmless with regard to any debts attributable to those properties. Defendant for his part requests that the court assign to him all properties having a negative value. With this information as background the court awards defendant sole title to the negative valued marital estate, and orders that defendant hold plaintiff harmless with regard to all encumbrances or liens of any nature on said property.
IV. The Distribution of the Marital Estate in Accordance With the Findings Made in Article III Supra
A. The Positive Valued Marital Estate
 Total Estate $78,144 Plaintiff's share 70% $54,701 Defendant's share 30% $23,843
 Plaintiff shall take and have:
 No. 106 Maple Avenue Newington, CT equity $23,341
1994 Volvo #940 equity 11,553
Misc. personal property and furniture — CT Page 8332 checking and savings accounts 550
 Amount due from defendant 19,257 ------- Total due plaintiff $54,701
 Defendant shall take and have
 No. 969 New Britain Avenue Rocky Hill, CT equity $32,000
 Personal property as more fully described in Article IIA (supra) $10,700 ------- subtotal $42,000
Less amount due plaintiff — $19,257
Total due defendant $23,443
Total amount of estate of positive value $78,144
B. The Negative Valued Marital Estate
In accordance with the findings made in Article IIIF, the defendant is awarded sole title to all property more particularly described in Article IIB supra.
V. Supplemental Orders Pertaining to the Marital Distribution Outlined in Article IV Supra
A. Said sum of $19,257 due plaintiff by defendant shall be evidenced by a promissory note for said amount bearing interest at the rate of six percent per annum and being payable to plaintiff in manner and form as follows:
By the payment of $5,000 one year from date hereof and by the payment of a similar sum annually thereafter until September, 2001 at which time all then remaining balances of principal and interest shall be fully due and payable.
Said sum of $19,257 is in the nature of lump sum alimony and shall in no way be dischargeable in any bankruptcy action instituted by defendant. CT Page 8333
B. Plaintiff shall convey to defendant all her interest in No. 969 New Britain Avenue, Rocky Hill, Connecticut. Defendant in turn will hold plaintiff harmless with regard to all mortgages, taxes, judgments and other encumbrances on said premises.
C. Each of the parties will execute all documents necessary to carry out the orders of this court.
VI. Orders Concerning the Minor Children
A. Custody and Visitation
The parties shall have joint custody of the two minor children with primary physical custody being with plaintiff. Defendant shall have reasonable rights of visitation including alternate weekends from Friday at 6:00 p. m. until Sundays at 6:00 p. m. and Wednesdays from 5:00 p. m. until 7:00 p. m.
B. Support:
In making the following order the court is aware that while defendant's present net weekly earnings are $158, he has been accurately described as being "extremely hard driven for monetary gain" and "a hard worker". With his skills in salesmanship and with machinery, the court believes defendant's present financial predicament will be short lived. The court also notes extensive testimony concerning defendant's "Houdini" like ability to draw checks to "cash" during recent past periods of financial insecurity. For these reasons it is ordered that defendant pay as support the sum of $50 weekly commencing one month from date herein, that he pay the sum of $75 weekly commencing four weeks thereafter, that he pay the sum of $125 weekly commencing eight weeks thereafter. Said payments shall continue for a period of eight weeks at which time defendant shall pay the sum of $250 weekly. In fashioning this order, the court is also mindful that defendant reported annual earnings of $52,000 very recently and that his presently reported low financial status coincides with an increase in the intensity of the domestic litigation. SeeTimm v. Timm, 195 Conn. 202, 208-210 (1985).
Health Insurance
Plaintiff shall maintain her present health insurance for the benefit of the minor children for so long as it is provided CT Page 8334 through her employment. The parties shall share equally all unreimbursed medical, dental, orthodontic, prescription, psychiatric, physiological, counseling or other unreimbursed health care expenses for the children. The provisions of Sec. 46b-84d C.G.S. shall apply.
Life Insurance
Defendant shall name the plaintiff as primary irrevocable beneficiary of his present $100,000 face value life insurance policy for so long as he is obligated to pay child support or alimony. Defendant shall provide annual verification that such policy remains in force, that no loans encumber such policy, and that plaintiff remains as primary irrevocable beneficiary.
Tax Exemptions
Plaintiff shall take Emily and defendant David as an exemption on their federal and state income tax returns.
VII. Alimony:
Having reviewed and weighed all the testimony as it concerns the provisions of Sec. 46b-82 C.G.S. and having given particular heed to the present modest but temporary financial condition of defendant, all as more fully set forth in Article VI (supra), this court concludes that an award of alimony is in order uncertain only as to amount.
It is ordered that defendant pay to plaintiff as alimony the sum of $1.00 per year, until October 20, 1989 at which time the youngest child of the parties shall reach her majority. This order is non-modifiable as to term only but shall sooner terminate upon the marriage of the plaintiff, the death of either party or plaintiff's cohabitation with an unrelated male within the meaning and intent of the statute. Wolfburg v. Wolfburg, 27 C.A. 396, 399 (1992).
(See Article VIIIA for further orders relating to alimony)
VIII. Other Orders:
A. Because of defendant's checkered financial past and plaintiff's continuing financial needs for her two minor children and herself, it is ordered that defendant file with plaintiff on CT Page 8335 a monthly basis commencing one month from date hereof an affidavit of his current gross and net weekly income.
In turn plaintiff, who is employed as a teacher and has a level income, will be required to notify defendant only in the event there is a change in her present income.
Lastly, the parties shall annually exchange federal income tax returns, commencing April 15, 1998.
These orders shall remain in effect during such time as defendant shall be required to comply with any periodic financial orders of the court:
B. Defendant is found to be in arrears to plaintiff in the amount of $4,900 in accordance with a previous order of this court and is ordered to pay said sum to plaintiff within six weeks from date hereof.
C. Each party shall be personally liable for all debts listed in his or her financial affidavit and shall hold the other party harmless in that regard.
D. No award of counsel fees is made to either party.
E. Defendant's Motion to Reduce Support is granted. Future support shall be paid by him in accordance with the provisions of Article IVB (supra).
John D. Brennan Judge Trial Referee