### STATE OF CONNECTICUT *v.* PATRICK J. FITZGERALD
### (SC 16195)

Borden, Norcott, Palmer, Vertefeuille and Zarella, Js.

Argued April 17—officially released July 31, 2001

*Lisa Herskowitz*, assistant state's attorney, with whom, on the brief, were *John T. Redway*, state's attorney, and *John Cashmon*, senior assistant state's attorney, for the appellant (state).

*Michael W. Murray*, for the appellee (defendant).

*Opinion*

NORCOTT, J. The dispositive issue in this certified appeal is whether the prosecutor's disclosure to the judge in a bench trial of the existence of a part B information so tainted the entire trial as to require that the judgment of conviction be reversed. The state appeals from the judgment of the Appellate Court reversing the defendant's conviction of operating a motor vehicle while under the influence of intoxicating liquor in violation of General Statutes § 14-227a (a) (1). *State* v. *Fitz-*

*gerald*, 54 Conn. App. 258, 266, 737 A.2d 922 (1999). The state claims that the Appellate Court improperly concluded that the disclosure of the part B information required reversal of the defendant's conviction. Id. We agree with the state and, accordingly, we reverse the judgment of the Appellate Court.

The relevant facts and procedural history are as follows. The defendant, Patrick J. Fitzgerald, was charged with operating a motor vehicle while under the influence of intoxicating liquor in violation of General Statutes § 14-227a (a).[1] Since he twice previously had been convicted of the same offense, he was subject to the enhanced penalty provisions of § 14-227a (h) (3).[2] The defendant was charged in a two part information according to the provisions of Practice Book § 36-14, formerly § 619.[3] Part A of the information charged the

---

[1] General Statutes § 14-227a (a) provides in relevant part: "No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. . . ."

[2] General Statutes § 14-227a (h) provides in relevant part: "Any person who violates any provision of subsection (a) of this section shall . . . (3) for conviction of a third and subsequent violation within ten years after a prior conviction for the same offense, (A) be fined not less than two thousand dollars nor more than eight thousand dollars, (B) be imprisoned not more than three years, one year of which may not be suspended or reduced in any manner, and sentenced to a period of probation requiring as a condition of such probation that such person perform one hundred hours of community service, as defined in section 14-227e, and (C) have such person's motor vehicle operator's license or nonresident operating privilege permanently revoked upon such third offense. . . ."

We note that the above quoted language is the statutory revision currently in effect at the time of this opinion. In 1995, when the defendant committed the offense at issue in this appeal, the revision of the statute differed, but in ways not relevant to the issue before us.

[3] Practice Book § 36-14 provides: "Where the information alleges, in addition to the principal offense charged, a former conviction or convictions, such information shall be in two separate parts, each signed by the prosecuting authority. In the first part, the particular offense with which the accused is charged shall be set out, and in the other part the former conviction or convictions shall be alleged. In alleging the former conviction, it is sufficient that the information allege the date when, the town or city where, and the court wherein such conviction was obtained and the crime of which

defendant with operating a motor vehicle while under the influence of intoxicating liquor. Part B of the information charged the defendant with two previous convictions of the same offense. Because the defendant was charged via a two part information, the clerk was required to comply with Practice Book § 37-11, formerly § 648, which mandates that the clerk notify the defendant of the existence of the second part of the information "in the absence of the judicial authority . . . ."[4] The defendant was notified of the part B information on April 11, 1996, and again on November 13, 1996. It appears from the record that the defendant was notified in the absence of the judicial authority on both occasions.

On November 5, 1996, the day on which voir dire was to begin, the defendant withdrew his claim for a jury trial and opted for a bench trial. Upon noting that the defendant had been charged by a substitute information, the trial court took the defendant's not guilty plea on the substitute information. Thereafter, the prosecutor informed the court of the existence of the part B information. The prosecutor stated: "There was, previously, he was previously advised of part B of the information on April 11th that's contained in the file. I just wanted that on the record. I don't know if it [was]

defendant was convicted, all of which may be stated in accordance with the provisions of Section 36-13."

This rule of practice codifies this court's decision in *State* v. *Ferrone*, 96 Conn. 160, 113 A. 452 (1921), on appeal after remand, 97 Conn. 258, 116 A. 336 (1922), wherein the court adopted the two part information process.

[4] Practice Book § 37-11 provides: "Prior to the time the defendant enters a guilty plea or, if the defendant pleads not guilty, prior to the commencement of trial, the clerk shall notify the defendant, in the absence of the judicial authority, of the contents of the second part of the information. The clerk shall enter on the docket the time and place of the giving of such notification and, where necessary, shall include entry thereof in the judgment file."

There is no dispute that the clerk complied with this provision. The issue, instead, concerns the prosecutor's disclosure of the part B information to the trial court.

brought before the court when he was advised." The judge responded: "Okay. So noted."

The defendant's bench trial began on November 6, 1996, and took place over a period of five days, after which the court found the defendant guilty of violating § 14-227a (a) (1). The defendant then moved for a new trial, noting that the court improperly had been advised of the existence of the part B information prior to the trial.[5] The court denied the motion, and a trial was held regarding the part B information. The defendant was found guilty of the part B information as well, and the court rendered judgment accordingly.

The defendant appealed from the judgment of the trial court to the Appellate Court, claiming that the trial court improperly had refused to order a new trial after the existence of the part B information had been made known to the court prior to the commencement of the trial. The Appellate Court reversed the defendant's conviction and ordered a new trial, concluding that the prosecutor's statement regarding the part B information tainted the case and constituted plain error requiring a new trial. *State* v. *Fitzgerald*, supra, 54 Conn. App. 266. We granted the state's petition for certification to appeal limited to the following issue: "Under the circumstances of this case, did the Appellate Court properly conclude that the mention by the state of a part B information required that the judgment of conviction be reversed?" *State* v. *Fitzgerald*, 251 Conn. 903, 738 A.2d 1092 (1999). This certified appeal followed.

The state claims that the Appellate Court improperly concluded that the prosecutor's comment in this case

---

[5] The attorney for the defendant stated at this point: "One other oral motion I'd like to make is a motion for a new trial based on the—it was quite clear the reason for the part B information being read outside the hearing of the court prior to the commencement of the trial that we've had the last few days as [the assistant state's attorney] indicated on the record before the trial was started after he was put to the substituted information, there was a notation made that there was part B information in this case."

constituted plain error and required reversal of the defendant's conviction. We agree.

"As a threshold matter, we first consider the issue of whether the Appellate Court improperly invoked the plain error doctrine . . . ." *Finley* v. *Aetna Life & Casualty Co.*, 202 Conn. 190, 195, 520 A.2d 208 (1987), overruled in part on other grounds, *Curry* v. *Burns*, 225 Conn. 782, 786, 626 A.2d 719 (1993). Practice Book § 60-5 provides in relevant part that a "court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ." We note that the "scope of [the] review [here] is limited to determining whether the Appellate Court abused its discretion in granting review under the plain error doctrine." *Finley* v. *Aetna Life & Casualty Co.*, supra, 196.

"Plain error review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *Westport Taxi Service, Inc.* v. *Westport Transit District*, 235 Conn. 1, 25, 664 A.2d 719 (1995). It is also a doctrine that should be invoked sparingly. See *Berchtold* v. *Maggi*, 191 Conn. 266, 274, 464 A.2d 1 (1983). " 'An important factor in determining whether to invoke the plain error doctrine is whether the claimed error result[ed] in an unreliable verdict or a miscarriage of justice.' " *DiNapoli* v. *Cooke*, 43 Conn. App. 419, 426, 682 A.2d 603, cert. denied, 239 Conn. 951, 686 A.2d 124 (1996), cert. denied, 520 U.S. 1213, 117 S. Ct. 1699, 137 L. Ed. 2d 825 (1997). A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice. See *State* v. *Schiappa*, 248 Conn. 132, 166, 728 A.2d 466, cert. denied, 528 U.S. 862, 120 S. Ct. 152, 145 L. Ed. 2d 129 (1999). We conclude that, under the facts of this

case, the Appellate Court abused its discretion when it concluded that the prosecutor's improper comment constituted plain error.

The improper disclosure by the prosecutor in this case did not amount to a mistake so manifest as to constitute plain error. Our review of the record reveals that any harm caused by the improper disclosure did not in any way undermine the validity of the guilty verdict. The trial court found that the evidence presented in the case sufficiently satisfied the state's burden of proving guilt beyond a reasonable doubt. Our careful review of the evidence supports this conclusion. Also we cannot conclude, as a finding of plain error requires, that the prosecutor's comment implicates the public confidence in our judiciary. Finally, we find nothing in the record that leads us to conclude that the trial court's verdict was unreliable or that it constituted a manifest injustice to the defendant.

The Appellate Court should have reviewed the record to determine whether the trial court abused its discretion in denying the defendant's motion for a new trial. See *State* v. *Hammond*, 221 Conn. 264, 269, 604 A.2d 793 (1992). In *Hammond*, this court stated that "[a]ppellate review of a trial court's decision granting or denying a motion for a new trial must take into account the trial judge's superior opportunity to assess the proceedings over which he or she has personally presided. . . . [W]e now conclude that the appropriate standard of review is abuse of discretion." (Citations omitted.) Id., 269–70. " 'In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done.' " *Davis* v. *Fracasso*, 59 Conn. App. 291, 295, 756 A.2d 325 (2000). We conclude that the

trial court did not abuse its discretion in rejecting the defendant's motion for a new trial.[6]

We first note that there is no evidence in the record that the prosecutor's actions in any way affected the fairness of the defendant's trial. More specifically, we agree with the state that the record reveals that the trial court had forgotten about the existence of the part B information when it rendered its guilty verdict on the underlying charge. On November 12, 1996, when the court issued its guilty verdict, the prosecutor immediately stated that the defendant needed to be put to plea on the part B information. The court responded: "There's a part B?" The Appellate Court rejected the state's claim that no impropriety had occurred because the trial court had forgotten that it improperly had been informed of the existence of the part B. The Appellate Court stated that "[i]t would be irrational for us to hold that a case-by-case determination must be made, the determining factor being how good a memory each trial judge possessed. The state's contention would create the bizarre situation in which it would be proper to mention part B before a judge with a poor memory but would be cause for reversal to mention part B before a judge with a good memory." *State* v. *Fitzgerald*, supra, 54 Conn. App. 265. Although we agree with the Appellate Court that it would be inappropriate to engage in a case-by-case analysis of the mental faculties of a given judge, we fail to see how, in the total absence of illicit motivation or biased judicial behavior, the prosecutor's comment here amounts to an error requiring a new trial. We leave for another day the situation in which a part B information is improperly revealed and the defendant can demonstrate either a prosecutor's illicit

---

[6] In determining whether the trial court abused its discretion in denying the defendant's motion for a new trial, it is necessary to address the error claimed by the defendant as grounds for a new trial. The error, as noted, was the improper disclosure of the part B information.

motivation or biased judicial behavior resulting from the improper revelation.[7] On the basis of the facts of this case, however, we conclude that the improper disclosure of the part B information does not require that the defendant receive a new trial.[8]

On the facts of this case, the prosecutor's comment before the court appears to be more of a technical

[7] The defendant makes reference to one comment by the trial judge as indicative of his awareness of the part B information prior to the guilty finding. On November 13, 1996, the day after the defendant was found guilty on the charge of operating a motor vehicle while under the influence of intoxicating liquor, he made a motion for a new trial based on the improper revelation of the part B information to the court. See footnote 5 of this opinion. The court responded to the defendant's motion, stating: "By notation I think [the existence of the part B information] was said on the record." The defendant argues that the court's statement reveals that it had been aware of the part B information all along. This statement, however, must be read in its context. It came the day *after* the court had issued its finding of guilty on the underlying charge and *after* the prosecutor had reminded the court of the need to proceed on the part B information. We are not persuaded that this single statement indicates either prior knowledge of the part B information or, more importantly, evidence of unfair treatment of the defendant by the trial court.

[8] We note further, that the defendant's basic argument, taken to its logical conclusion, would produce a near total ban on bench trials for the offense of operating a vehicle while under the influence of intoxicating liquor. Under § 14-227a (a), a person violates the law if he or she operates a motor vehicle "(1) while under the influence of intoxicating liquor . . . or (2) while such person has an *elevated blood alcohol content.* . . ." (Emphasis added.) " '[E]levated blood alcohol content' " is defined in § 14-227a (a) (2) as either: "(A) a ratio of alcohol in the blood of such person that is ten-hundredths of one per cent or more of alcohol, by weight, or (B) if such person has been convicted of a violation of this subsection, a ratio of alcohol in the blood of such person that is seven-hundredths of one percent or more of alcohol, by weight."

In other words, a first time offender's blood alcohol content must be at least 0.10 while a repeat offender's need only be 0.07. The judge presiding in a bench trial therefore would be aware that the defendant before him was a repeat offender when the judge was notified that the state's burden was to prove 0.07, rather than 0.10. The defendant's argument suggests that this entire statutory scheme would need to be eliminated as it inherently injects knowledge of a prior conviction into the mind of the fact finder. We place greater faith in the ability of trial judges to fairly find malfeasance,

violation of the rules of practice rather than a substantive deprivation of the defendant's right to an impartial fact finder. As a technical violation, our decision in *State* v. *Fullwood*, 194 Conn. 573, 484 A.2d 435 (1984), is instructive. In *Fullwood*, we stated that a clerk's failure to record on the docket the time and place during which the defendant had been notified of the part B information did not require dismissal of part B of the indictment. Id., 577. We note further, that even the failure by a clerk explicitly to notify the defendant of the existence of the part B information will not work to require a new trial; *State* v. *Reddick*, 224 Conn. 445, 450, 619 A.2d 453 (1993); or require the dismissal of the part B information; *State* v. *Bradley*, 39 Conn. App. 82, 95, 663 A.2d 1100 (1995), cert. denied, 236 Conn. 901, 670 A.2d 322 (1996); when the defendant can be deemed to have actual notice of the part B information.

We recognize that in the present case, the defendant alleges more than a technical violation of Practice Book § 37-11. He claims that the disclosure to the court prevented him from receiving a fair trial. We disagree, however, with the defendant's contention that the prosecutor's improper disclosure required that the defendant receive a new trial. We note further that the Appellate Court's reliance on *Barbieri* v. *Cadillac Construction Corp.*, 174 Conn. 445, 389 A.2d 1263 (1978), as grounds for ordering a new trial, was misplaced. In *Barbieri*, we stated: "Since we cannot speculate as to the degree of influence which the objectionable [material] had in the final result . . . the safer rule is to grant a new trial." (Internal quotation marks omitted.) Id., 451. There, we ordered a new trial because we were unable, as a reviewing court, to ascertain the degree of harm caused when a trial referee made improper judicial findings in a case tried without a jury. Id., 450. The

without being influenced by inadmissible or irrelevant evidence, than does the defendant.

present facts, however, concern an allegedly improper action by a prosecutor, not the judicial authority. Thus, unlike in *Barbieri*, where we were unable to separate the party whose conduct is called into question, on the one hand, from the decision maker, on the other, we are able to do so in the present case.

Furthermore, it is clear that any claimed error that occurred by the prosecutor's disclosure of the part B information could have been remedied by requesting that the judge recuse himself before the trial began.[9] As noted previously, the prosecutor informed the court of the existence of the part B information prior to trial. At that point, the defendant was aware of the potential for bias and could have filed a motion for judicial disqualification under Practice Book § 1-22, formerly § 996, and Practice Book § 1-23, formerly § 997.[10]

This court, in *Timm* v. *Timm*, 195 Conn. 202, 203, 487 A.2d 191 (1985), was required to determine whether the participation in pretrial settlement conferences by a trial referee required that the referee disqualify himself from the later nonjury trial. In determining that such

[9] This argument was first raised by the state to the Appellate Court. Unlike the Appellate Court, however, we are persuaded by this reasoning.

[10] Practice Book § 1-22, formerly § 996, provides in relevant part: "A judicial authority shall, upon motion of either party or upon its own motion, be disqualified from acting in a matter if such judicial authority is disqualified from acting therein pursuant to Cannon 3 (c) of the Code of Judicial Conduct . . . ."

Cannon 3 (c) (1) of the Code of Judicial Conduct provides in relevant part: "A judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned . . . ."

Practice Book § 1-23, formerly § 997, provides: "A motion to disqualify a judicial authority shall be in writing and shall be accompanied by an affidavit setting forth the facts relied upon to show the grounds for disqualification and a certificate of the counsel of record that the motion is made in good faith. The motion shall be filed no less than ten days before the time the case is called for trial or hearing, unless good cause is shown for failure to file within such time."

At the time of the defendant's trial, §§ 996 and 997 were in effect and they differed from §§ 1-22 and 1-23 in only minor respects.

participation did not require the referee's recusal, we noted that "[t]he record is devoid of any suggestion of actual impropriety or bias on the part of the referee." Id., 205. We further stated that "[t]he conduct of the defendant in this case, in failing to raise the issue of the referee's disqualification either before or during the trial, can be construed as the functional equivalent of 'consent in open court' to [the judge's] presiding over the trial." Id.

Here too, as noted, there is no suggestion in the record of impropriety or bias on the part of the trial court judge. Moreover, instead of requesting that the judge recuse himself, the defendant chose to proceed to trial on the underlying charge. As in *Timm*, we conclude here that the defendant's actions are tantamount to consent to the judge's participation in the case. It would be inequitable to permit the defendant to notice the purported bias, proceed to trial, hoping to prevail on the merits, and then, after losing at trial, request a reversal for the alleged bias not objected to earlier.

We emphasize that this decision should not be read to condone the regular disclosure of a part B information to a fact finder. Section 37-11 clearly prohibits the judicial authority from being made aware of the existence of a part B information, thereby assuring that the sentencing enhancement provisions normally contained in a part B information do not unduly influence a fact finder's disposition. The question before this court, however, is not whether a technical error occurred regarding compliance with the rules of practice, but whether, under the facts of this case, the disclosure by the prosecutor required reversal of the defendant's conviction. We conclude that it did not.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion the other justices concurred.